**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

COMERICA BANK,
a Texas banking association,

      Plaintiff,

vs

PATRICIA GORMELY PRINCE, P.C.,
a Michigan limited liability company; and
UNITED STATES OF AMERICA,
on behalf of its agency, the United States
Small Business Administration,

      Defendants,

_____/

## COMPLAINT

Plaintiff, Comerica Bank alleges:

### Parties, Jurisdiction and Venue

1.     Comerica Bank, ("Comerica"), is a Texas banking association with its principal place of business in Dallas, Texas.

2.     Defendant Patricia Gormely Prince, P.C. ("Debtor") is a Michigan professional services corporation, with a registered office address of 800 W. Long Lake Road, Suite 200, Bloomfield Hills, Oakland County, Michigan 48302 (the "Registered Office").

3.     Shaheen I. Imami ("Mr. Imami") is presently the Debtor's sole officer and shareholder.  Mr. Imami is the President, Treasurer, Secretary, Director and Resident Agent of the Debtor.  Upon information and belief, Mr. Imami currently resides at 902 Garnett Avenue, Chattanooga, Tennessee 37405-3014.  Mr. Imami is also the conservator or fiduciary of one or

1

more of the Debtor's clients and account debtors, the payment obligations of whom are part of Comerica's Business Asset Collateral.

4.     Defendant United States of America is joined as a Defendant in these proceedings pursuant to 28 U.S.C. §2410(a) on behalf of its agency, the United States Small Business Administration ("SBA"), because upon information and belief, the SBA claims an interest in the Business Asset Collateral which is part of the subject matter of this action pursuant to a UCC-1 Financing Statement filed with the Michigan Secretary of State on June 3, 2020 as Document No. 2020-00603001399-7  See Exhibit 3, Page 23.

5.     Jurisdiction exists under 28 U.S.C. §1331 because the United States government is a necessary Defendant to this action, and because the SBA is a federal government agency established by statute which is subject to this Court's jurisdiction pursuant to 15 U.S.C. §634(b)(1). Defendant Untied State of America has an address for service of process in care of the (i) Office of the United States Attorney General, United States Department of Justice, 950 Pennsylvania Avenue NW, Washington, D.C. 20530-0001, and (ii) United States Attorney's Office. Eastern District of Michigan, Peter A. Caplan, Chief Civil Division, 211 W. Fort Street, Suite 2001, Detroit, MI  48226.

6.     The Court otherwise has subject matter jurisdiction under 28 U.S.C. §1332 because the amount in controversy between the parties, exclusive of interest and costs, exceeds $75,000.00 and the parties are citizens of different states.

7.     Venue is proper in this Court under 28 U.S.C. §1391(b)(1)-(2) and §1391(e) because: the Debtor is a resident of this judicial district; and,  a substantial part of the events or omissions giving rise to Comerica's claim occurred in Oakland County, Michigan, which is in this judicial district.

2

**General Allegations**

8.     Defendant obtained secured revolving commercial line of credit financing from Comerica (the "Line of Credit") which is evidenced, in part, by a Master Revolving Note (Prime Rate–Demand–Optional Advances) dated May 27, 2016 in the maximum principal amount of $200,000.00 (the "Note").  An accurate copy of the Note is attached hereto as Exhibit 1 and is incorporated herein by this reference.

9.     The Note is payable upon demand.

10.     Interest on the unpaid principal balance of the Note accrues at a daily adjusting variable rate equal to the Prime Rate as defined in that instrument, resulting in a non-default rate which is presently 3.25% per annum.  In the event of any default, however, interest on the unpaid principal balance of the Note accrues at a rate equal to the Prime Rate as defined in the Note plus an additional 3.00% per annum, resulting in a default interest rate which is presently 6.25% per annum (the "Default Interest Rate").

11.     The Note requires the payment of late charges equal to 5.00% of the unpaid portion of any regularly scheduled payment not received by Comerica within ten (10) calendar days after the due date (the "Late Charges").

12.     To obtain the Line of Credit, and the ensure the continued availability of financing for the Debtor from Comerica, the Debtor executed a Security Agreement (the "Security Agreement") granting Comerica a blanket first security interest in all of its assets, property and property interests, as more fully described in the Security Agreement, of every kind and nature, wherever located, including, without limitation: all accounts, accounts receivable, deposit accounts, general intangibles (including payment intangibles), software, chattel paper (including electronic chattel paper), contract rights, documents, instruments, commercial tort claims, money

3

and rights to payment receivables, letter of credit rights, investment property, goods, inventory, equipment, furniture and fixtures, all supporting obligations of the foregoing, and all cash and noncash proceeds and products (including without limitation insurance proceeds) of the foregoing, and all additions and accessions thereto, substitutions therefore and replacements thereof (sometimes hereinafter referred to collectively as the "Business Asset Collateral").  An accurate copy of the Security Agreement is attached hereto as Exhibit 2 and is incorporated herein by this reference

13.     Comerica perfected a security interest in the Business Asset Collateral by filing and continuously maintaining its UCC-1 and UCC-3 Financing Statements with the Michigan Secretary of State (the "Financing Statements").  As a result of its Financing Statements, Comerica has held a valid and properly perfected first priority security interest in the Business Asset Collateral since December 27, 1993.  Accurate copies of the Financing Statements are attached hereto as composite Exhibit 3, Pages 1-22 and are incorporated herein by this reference.

14.     Comerica's interest in the Business Asset Collateral is superior to and has priority over any interest of Defendant United States of America and the SBA in the Business Asset Collateral.

15.     By executing the Note (Exhibit 1), the Security Agreement (Exhibit 2) and the related and supporting loan documents in connection with the Line of Credit financing (collectively the "Loan Documents"), the Debtor agreed to numerous affirmative and negative covenants, including, without limitation, the following:

a)      to furnish to Comerica, in form and at such intervals as Comerica may request, any information Comerica may reasonably request, and to allow

Comerica to examine, inspect and copy any of the Debtor's book and records;

b) to keep the Business Asset Collateral free at all times from all claims, liens, security interests and encumbrances other than those in favor of Comerica;

c) not to sell or transfer, or permit to be sold or transferred, all or any part of the Business Asset Collateral without Comerica's prior written consent;

d) not to make or permit any modification, compromise or substitution for any Account Receivable without Comerica's prior written consent;

e) to arrange and cooperate with Comerica in verification of Accounts Receivable directly with account debtors;

f) to immediately notify Comerica in writing of any change in or discontinuance of Debtor's place of business;

g) not to sell, dispose of, or otherwise transfer the Business Asset Collateral or any interest therein without Comerica's prior written consent;

h) to maintain insurance with respect to the Business Asset Collateral with a loss payable endorsement in favor of Comerica;

i) to immediately surrender the Business Asset Collateral to Comerica upon default;

j) to fully and promptly assist Comerica in the collection and enforcement of the Business Asset Collateral, including accounts receivable, payment rights and intangibles, and to hold in trust for Comerica all payments received in connection with the Business Asset Collateral, and any sale, lease or other disposition of any Business Asset Collateral; and,

k)      to establish and maintain a lock box and cash collateral account for Comerica's benefit, and to notify all account debtors and other parties obligated to Debtor that all payments must be directed to that Comerica lock box and account.

16.     The Debtor is contractually liable, pursuant to the Note (Exhibit 1) and Security Agreement (Exhibit 2), to pay Comerica's reasonable attorneys' fees and costs incurred in connection with enforcement of those loan documents and collection of the Line of Credit indebtedness evidenced by the Note (the "Legal Fees").

17.     On October 20, 2021, Comerica served its Demand Letter and Notice and Demand for Dominion of Funds with Directive for Use of Collateral Deposit Account (the "Demand Letter") on the Debtor, Mr. Imami and their attorney, Michael D. Lieberman.  An accurate copy of Comerica's Demand Letter is attached hereto as Exhibit 4 and is incorporated herein by this reference.

18.     By service of the Demand Letter, Comerica demanded the immediate payment in full of all the Debtor's indebtedness under the Note and in connection with the Line of Credit.

19.     Upon service of the Demand Letter, in accordance with Comerica's rights under the Security Agreement (See Exhibit 2, Section 3, Page 4), Comerica:

a)      revoked the Debtor's right to independently collect or otherwise sell, assign, transfer, convey and/or dispose of the Business Asset Collateral and its proceeds;

b)      demanded that the Debtor and Mr. Imami immediately account for, disgorge, segregate and hold in trust for Comerica all payments received in connection with the Business Asset Collateral and from the collection, sale,

or other disposition of any Business Asset Collateral, without deduction or setoff of any kind or nature;

c)      demanded that the Debtor and Mr. Imami immediately turn over to Comerica for deposit to the Cash Collateral Account any funds, check(s) or other payments(s) received on the Business Asset Collateral or from the collection, sale, lease, assignment or other disposition of any Business Asset Collateral, or arising from any other rights or interests of the Debtor in the Business Asset Collateral, in the form received, without commingling with any other funds; and,

d)      demanded that the Debtor and Mr. Imami instruct all account debtors of Patricia Gormely Prince, P.C., including all estates or clients for which Mr. Imami is a fiduciary, to make all payments (and all electronic funds transfer payments) directly to the order of Comerica or to a Comerica Collateral Deposit Account.

20.     The Debtor and Mr. Imami have failed and refused to comply with Comerica's Demand Letter.

21.     The Debtor is in breach and default of the Note and Security Agreement as a result of its failure to pay the Line of Credit indebtedness in full upon receipt of the Demand Letter, and the failure and refusal to comply with the Security Agreement and Demand Letter.

22.     Independent of Comerica's demand for payment, the Debtor is in default of the Note, the Security Agreement and the other Loan Documents between the parties for reasons including, without limitation, the adverse change and deterioration of the Debtor's financial

condition or business operations; and, other substantial cause for Comerica to deem itself insecure and the prospect of payment impaired.

23.     The Debtor is liable to Comerica under the Note, Security Agreement and Loan Documents in an amount not less than $180,739.11, plus additional interest from December 10, 2021 calculated at the Default Interest Rates, together with additional Late Charges, Legal Fees, and other collection expenses which are contractual elements of damages pursuant to the Note, Security Agreement and Loan Document between the parties (the "Indebtedness").

## Count I – Breach of the Note and Security Agreement

24.     Comerica incorporates by reference the above paragraphs as if fully restated herein.

25.     The Debtor executed the Note (Exhibit 1) and the Security Agreement (Exhibit 2) to Comerica.

26.     The Debtor has defaulted under the terms of the Note (Exhibit 1), and the Security Agreement (Exhibit 2).

27.     Pursuant to the Note, the Security Agreement, and the related Loan Documents between the parties, Comerica has declared the entire unpaid balance of the Indebtedness to be due and payable immediately.

28.     The Debtor is liable to Comerica for full amount of the Indebtedness, in an amount not less than $180,739.11, plus additional interest from December 10, 2021 calculated at the Default Interest Rates, together with additional Late Charges, Legal Fees, and other collection expenses which are contractual elements of damages pursuant to the Note, the Security Agreement and the related and supporting Loan Documents between the parties.

## Count II –Claim and Delivery of the Business Asset Collateral

29.     Comerica incorporates by reference the above paragraphs as if fully restated herein.

30.     On or about May 27, 2016, the Debtor executed the Security Agreement (Exhibit 2) granting Comerica a first security interest in all of its business assets, more specifically described in the Security Agreement, and categorically described and defined herein as the Business Asset Collateral.

31.     Comerica perfected its security interest in the Business Asset Collateral by possession of the Debtor's bank deposits at Comerica and by filing its Financing Statements with the Michigan Secretary of State (See Exhibits 3, Pages 1-22).

32.     The Security Agreement provides that upon the occurrence of any Event of Default Comerica may: a) "[e]xercise all the rights and remedies upon default, in foreclosure and otherwise, available to secured parties under the provisions of the Uniform Commercial Code"; b) "[i]nstitute legal proceedings to foreclose upon the lien and security interest granted by this Agreement, to recover judgment for all amounts then due and owing as Indebtedness, and to collect the same out of any Collateral or the proceeds of any sale of it"; and, "[p}ersonally or by agents, attorneys or appointment of a receiver, enter upon any premises where Collateral may then be located, and take possession of all or any of it and/or render it unusable; and without being responsible for loss or damage to such Collateral, hold, operate, sell, lease, or dispose of all or any Collateral at one or more public or private sales, leasing or other dispositions."  See Exhibit 2, Security Agreement, Page 5, Section 4.2.

33.     The Security Agreement further requires that the "Debtor shall at the request of Bank, notify the account debtors or obligors of Bank's security interest in the Collateral and direct payment of it to Bank.  Bank may, itself, upon the occurrence and at any time during the continuance or existence of any Event of Default, so notify the account debtors or obligors of Bank's security interest in the Collateral and direct such account debtors or obligors to make

9

payments directly to Bank.  At the request of Bank, whether or not an Event of Default shall have occurred, Debtor shall immediately take such actions as the Bank shall request to establish exclusive control (as defined in the Uniform Commercial Code) by Bank of any Collateral which is of such a nature that perfection of a security interest may only be accomplished by control."  See Exhibit 2, Security Agreement, Page 5, Section 4.3.

34.     The Security Agreement further requires the Debtor and its officers and agents to assemble and surrender the Business Asset Collateral to Comerica.  Specifically, the Security Agreement requires them "upon request of the Bank, to assemble the Collateral and make it available to Bank at any place designated by Bank which is reasonably convenient to Bank and Debtor.  Bank may take any and all actions that it deems necessary or appropriate to protect the Collateral and its security interest in the Collateral, and all costs and expenses for the same shall be added to the Indebtedness and shall be payable upon demand."  This obligation to assemble and surrender the Business Asset Collateral extends to proceeds held by the Debtor or their agents in trust or on deposit at other financial institutions.  See Exhibit 2, Security Agreement, Page 6, Section 4.8.

35.     The Security Agreement further requires that the "Debtor will give Bank not less than ninety (90) days' prior notice of all contemplated changes in the Debtor's name, location, chief executive office, principal place of business, and/or location of any Collateral, but the giving of such notice shall not cure any Event of Default caused by this change."  See Exhibit 2, Security Agreement, Page 6, Section 5.2.

36.     Comerica's perfected its security interest in the Business Asset Collateral is superior to and has priority over the interest of Defendant United States of America or the SBA in the Business Asset Collateral.

37.     Upon information and belief, no other creditors claim a security interest in the Business Asset Collateral, and any other potential claim or interest would also be subordinate to Comerica's recorded first priority lien interest.

38.     The Indebtedness is now due in full, and Comerica has demanded that the Debtor make immediate payment.

39.     The Debtor has failed to pay off the Indebtedness as required by the Note, the Security Agreement, and the related Loan Documents.

40.     Comerica has a contractual right to immediate possession of the Business Asset Collateral and all proceeds of the Business Asset Collateral pursuant to the Security Agreement, the Loan Documents, and the Uniform Commercial Code.

41.     The Debtor has willfully failed to comply with the Demand Letter and has obstructed Comerica's exercise of its rights under the Security Agreement, the Loan Document, and the Uniform Commercial Code.

42.     The Debtor and Mr. Imami have not accounted for their disposition of the Business Asset Collateral, and/or the proceeds of same, and continue to use the Business Asset Collateral contrary to Comerica's demands and creditor's rights.  From the limited financial information made available to Comerica, the Debtor may be insolvent, and unable to pay its debts and obligations as they come due.

43.     The Debtor and Mr. Imami appear to be actively converting and/or dissipating the Business Asset Collateral, including the accounts receivable and/or proceeds of Comerica's Business Asset Collateral, without making any payment of the secured Indebtedness.

44.     The Revised Judicature Act (MCL 600.3605) and the Business Corporations Act (MCL 450.1551 et. seq.) read together, permit a lien creditor to bring an action against the

managers and directors of a corporation for the dissipation of corporate assets during the process of dissolution in the face of known debts.

45.     Upon information and belief, the Business Asset Collateral consisting of personal property has been removed from the Registered Office in violation of the Security Agreement.  See Exhibit 2, Security Agreement, Page 7-8, Section 5.15.

46.     Comerica and other creditors face immediate and irreparable harm if the Court does not enforce Comerica's contractual right to immediate surrender and possession of the Business Asset Collateral, together with a full accounting and appropriate injunctive relief to prevent the Debtor and its officers and agents from further dissipating, transferring and/or converting the Business Asset Collateral.

47.     At the request of any creditor, Courts have broad discretionary power in compelling officers and directors to account for their conduct in the management and disposition of corporate assets, including suspending their powers.

48.     This Court should exercise its legal and equitable power over the Business Asset Collateral to prevent the dissipation of corporate assets by an insolvent Debtor during the process of dissolution in the face of known debts.

49.     Upon information and belief, Defendants have wrongfully dissipated Comerica's collateral, and/or converted the Business Asset Collateral, at a point in time when the Debtor may be insolvent and unable to repay any portion of their defaulted commercial Indebtedness to Comerica.

50.     Comerica will have no adequate remedy at law if the Debtor and Mr. Imami  are not compelled to provide an immediate accounting of the Business Asset Collateral and its proceeds, including account debtor information from which , and if remain in control of the

Business Asset Collateral and its pro, and these assets or the proceeds of these assets are converted or dissipated by the Defendants notwithstanding Comerica's first perfected security interest and creditor's rights.

51.     Comerica will suffer direct, immediate and irreparable harm and injury if the Debtor, Mr. Imami or any person(s) acting through them on behalf of the Debtor are permitted to collect the accounts, or other income and profits of the business, and dissipate, commingle, convert, conceal, or dispose of the collateral, and the proceeds of same, which secure payment of the Indebtedness.

52.     Upon information and belief, and without the benefit of an accounting, Comerica believes that the Business Asset Collateral has an aggregate value that is less than the Indebtedness. For purposes of potential bond requirements only, Comerica states on information and belief that the fair market value for the Business Asset Collateral, excluding accounts receivable and general intangibles, is not more than $50,000.00.

53.     Upon information and belief, the Business Asset Collateral consists of accounts receivable and independent pieces of property which are not of uniform kind, quality and value.

54.     As a result of the Events of Default, including the financial distress of Debtor, as evidenced by the failure to pay the Indebtedness, Comerica legitimately fears that the Business Asset Collateral may be uninsured, and is in immediate risk of damage, loss and/or irreparable harm.

55.     The Business Asset Collateral is presently subject to damage, accident, transfer, sale or deterioration due to the use, passage of time, depreciation, and disposition or dissipation by the Debtor and Mr. Imami, so as to substantially impair its value.

13

56.     Comerica is entitled to immediate possession of its Business Asset Collateral by operation of the Security Agreement and Article 9 of the Michigan Uniform Commercial Code.

### Relief Requested

WHEREFORE, Comerica requests the following relief:

a)      that Defendant Patricia Gormely Prince, P.C. be found liable to Comerica for the full amount of the Indebtedness as set forth above; and

b)      that money judgment be entered in favor of Comerica, and against Defendant Patricia Gormely Prince, P.C. in an amount not less than $180,739.11, plus additional interest from December 10, 2021 calculated at the Default Interest Rates, together with additional Late Charges, Legal Fees, and other collection expenses which are contractual elements of damages pursuant to the Loan Documents; and

c)      that an order be entered requiring the Debtor to appear and show cause why Comerica should not be authorized to take immediate possession of the Business Asset Collateral and all related books and records pending entry of a judgment of possession in favor of Comerica; and

d)      that an order be entered requiring Debtor's officers and agents, including Mr. Imami, to provide Comerica with full and complete access to all its books and records, together with an accounting of any collection, conversion, conveyance, transfer or other disposition of Comerica's Business Asset Collateral; and

e)      that a judgment for possession be entered granting Comerica possession of the Business Asset Collateral, directing Defendant Patricia Gormely Prince, P.C.'s current and former officers and agents to surrender all Business Asset Collateral to Comerica, including all Account Receivable and proceeds; to fully and promptly assist Comerica in the collection and enforcement

of the Business Asset Collateral and authorizing Comerica to seize and to sell the Business Asset

Collateral and apply the proceeds against the Indebtedness.

**STANCATO TRAGGE WELLS, PLLC**

/s/ John P. Tragge

Dated: December 14, 2021

_____

John P. Tragge (P46964)
Attorney for Plaintiff Comerica Bank
2 Towne Square, Suite 825
Southfield, Michigan 48076
(248) 731-4500
jtragge@stwlawfirm.com

# EXHIBIT 1



# MASTER REVOLVING NOTE
### PRIME RATE
### DEMAND-OPTIONAL ADVANCES (BUSINESS AND COMMERCIAL LOANS ONLY)

| AMOUNT | NOTE DATE | MATURITY DATE |
|---|---|---|
| $200,000.00 | 5/27, 20 14 | ON DEMAND |

ON DEMAND (or as otherwise provided in this Note), FOR VALUE RECEIVED, the undersigned promise(s) to pay to the order of COMERICA BANK (herein called "Bank"), at any office of the Bank in the State of Michigan, the principal sum of **Two Hundred Thousand and 00/100 Dollars ($200,000.00)**, or so much of said sum as has been advanced and is then outstanding under this Note, together with interest thereon at a per annum rate equal to the Prime Rate **Plus** the Applicable Margin.

This Note is a note under which advances, repayments and re-advances may be made from time to time, subject to the terms and conditions of this Note.

*AT NO TIME SHALL THE BANK BE UNDER ANY OBLIGATION TO MAKE ANY ADVANCES TO THE UNDERSIGNED PURSUANT TO THIS NOTE (NOTWITHSTANDING ANYTHING EXPRESSED OR IMPLIED IN THIS NOTE OR ELSEWHERE TO THE CONTRARY, INCLUDING, WITHOUT LIMIT, IF THE BANK SUPPLIES THE UNDERSIGNED WITH A BORROWING FORMULA) AND THE BANK, AT ANY TIME AND FROM TIME TO TIME, WITHOUT NOTICE, AND IN ITS SOLE DISCRETION, MAY REFUSE TO MAKE ADVANCES TO THE UNDERSIGNED WITHOUT INCURRING ANY LIABILITY DUE TO THIS REFUSAL AND WITHOUT AFFECTING THE UNDERSIGNED'S LIABILITY UNDER THIS NOTE FOR ANY AND ALL AMOUNTS ADVANCED.*

Unless sooner demanded, accrued and unpaid interest on the unpaid principal balance outstanding hereunder shall be payable monthly, in arrears, on the first Business Day of each month. Interest accruing hereunder shall be computed on the basis of a year of 360 days, and shall be assessed for the actual number of days elapsed, and in such computation, effect shall be given to any change in the applicable interest rate as a result of any change in the Prime Rate on the date of each such change. No interest shall accrue under this Note until the date of the first advance made by the Bank; after that, interest on all advances shall accrue and be computed on the principal balance outstanding from time to time under this Note in accordance with the terms hereof until the same is paid in full.

Upon demand and from and after the occurrence of any Default hereunder, and so long as any such Default remains unremedied or uncured thereafter, the Indebtedness outstanding under this Note shall bear interest at a per annum rate of three percent (3%) above the otherwise applicable interest rate hereunder, which interest shall be payable upon demand. In addition to the foregoing, a late payment charge equal to five percent (5%) of each late payment hereunder may be charged on any payment not received by Bank within ten (10) calendar days after the payment due date therefor, but acceptance of payment of any such charge shall not constitute a waiver of any Default hereunder.

In no event shall the interest payable under this Note at any time exceed the maximum rate permitted by law.

The amount and date of each advance hereunder, its applicable interest rate and the amount and date of any repayment shall be noted on Bank's records, which records shall be conclusive evidence thereof, absent manifest error; provided, however, any failure by Bank to make any such notation, or any error in any such notation, shall not relieve the undersigned of its/their obligations to repay Bank all amounts payable by the undersigned to Bank under or pursuant to this Note, when due in accordance with the terms hereof.

In the event that any payment under this Note becomes due and payable on any day which is not a Business Day, the due date thereof shall be extended to the next succeeding Business Day, and, to the extent applicable, interest shall continue to accrue and be payable thereon during such extension at the rate(s) set forth in this Note.

All payments to be made by the undersigned to Bank under or pursuant to this Note shall be in immediately available United States funds, without setoff or counterclaim, and in the event that any payments submitted hereunder are in funds not available until collected, said payments shall continue to bear interest until collected.

The undersigned may prepay all or part of the outstanding balance of any Indebtedness hereunder at any time without premium or penalty. Any prepayment hereunder shall also be accompanied by the payment of all accrued and unpaid interest on the amount so prepaid.

If any Change in Law shall (a) subject Bank to any tax, duty or other charge with respect to this Note or any Indebtedness hereunder, or shall change the basis of taxation of payments to Bank of the principal of or interest under this Note or any other amounts due under this Note in respect thereof (except for changes in the rate of tax on the overall net income of Bank imposed by the jurisdiction in which Bank's principal executive office is located); or (b) impose, modify or deem applicable any reserve (including, without limitation, any imposed by the Board of Governors of the Federal Reserve System), special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by Bank, or shall impose on Bank or the foreign exchange and interbank markets any other condition affecting this Note or the Indebtedness hereunder; and the result of any of the foregoing is to increase the cost to Bank of maintaining any part of the Indebtedness hereunder or to reduce the amount of any sum received or receivable by Bank under this Note by an amount deemed by the Bank to be material, then the undersigned shall pay to Bank, within fifteen (15) days of the undersigned's receipt of written notice from Bank demanding such compensation, such additional amount or amounts as will compensate Bank for such increased cost or reduction. A certificate of Bank, prepared in good faith and in reasonable detail by Bank and submitted by Bank to the undersigned, setting forth the basis for determining such additional amount or amounts necessary to compensate Bank shall be conclusive and binding for all purposes, absent manifest error.

In the event that any Change in Law affects or would affect the amount of capital required or expected to be maintained by Bank (or any corporation controlling Bank), and Bank determines that the amount of such capital is increased by or based upon the existence of any obligations of Bank hereunder or the maintaining of any Indebtedness hereunder, and such increase has the effect of reducing the rate of return on Bank's (or such controlling corporation's) capital as a consequence of such obligations or the maintaining of such Indebtedness hereunder to a level below that which Bank (or such controlling corporation) could have achieved but for such circumstances (taking into consideration its policies with respect to capital adequacy), then the undersigned shall pay to Bank, within fifteen (15) days of the undersigned's receipt of written notice from Bank demanding such compensation, additional amounts as are sufficient to compensate Bank (or such controlling corporation) for any increase in the amount of capital and reduced rate of return which Bank reasonably determines to be allocable to the existence of any obligations of the Bank hereunder or to maintaining any Indebtedness hereunder. A certificate of Bank as to the amount of such compensation, prepared in good faith and in reasonable detail by the Bank and submitted by Bank to the undersigned, shall be conclusive and binding for all purposes absent manifest error.

This Note and any other indebtedness and liabilities of any kind of the undersigned (or any of them) to the Bank, and any and all modifications, renewals or extensions of it, whether joint or several, contingent or absolute, now existing or later arising, and however

evidenced and whether incurred voluntarily or involuntarily, known or unknown, or originally payable to the Bank or to a third party and subsequently acquired by Bank, including, without limitation, any late charges; loan fees or charges; overdraft indebtedness; costs incurred by Bank in establishing, determining, continuing or defending the validity or priority of any security interest, pledge or other lien or in pursuing any of its rights or remedies under any loan document (or otherwise) or in connection with any proceeding involving the Bank as a result of any financial accommodation to the undersigned (or any of them); and reasonable costs and expenses of attorneys and paralegals, whether inside or outside counsel is used, and whether any suit or other action is instituted, and to court costs if suit or action is instituted, and whether any such fees, costs or expenses are incurred at the trial court level or on appeal, in bankruptcy, in administrative proceedings, in probate proceedings or otherwise (collectively "Indebtedness") are secured by and the Bank is granted a security interest in and lien upon all items deposited in any account of any of the undersigned with the Bank and by all proceeds of these items (cash or otherwise), all account balances of any of the undersigned from time to time with the Bank, by all property of any of the undersigned from time to time in the possession of the Bank and by any other collateral, rights and properties described in each and every deed of trust, mortgage, security agreement, pledge, assignment and other security or collateral agreement which has been, or will at any time(s) later be, executed by any (or all) of the undersigned to or for the benefit of the Bank (collectively "Collateral"). Notwithstanding the above, (i) to the extent that any portion of the Indebtedness is a consumer loan, that portion shall not be secured by any deed of trust or mortgage on or other security interest in any of the undersigned's principal dwelling or in any of the undersigned's real property which is not a purchase money security interest as to that portion, unless expressly provided to the contrary in another place, or (ii) if the undersigned (or any of them) has (have) given or give(s) Bank a deed of trust or mortgage covering California real property, that deed of trust or mortgage shall not secure this Note or any other indebtedness of the undersigned (or any of them), unless expressly provided to the contrary in another place, or (iii) if the undersigned (or any of them) has (have) given or give(s) the Bank a deed of trust or mortgage covering real property which, under Texas law, constitutes the homestead of such person, that deed of trust or mortgage shall not secure this Note or any other indebtedness of the undersigned (or any of them) unless expressly provided to the contrary in another place.

If (a) the undersigned (or any of them) or any guarantor under a guaranty of all or part of the Indebtedness ("guarantor") (i) fail(s) to pay this Note or any of the Indebtedness when due, by maturity, acceleration or otherwise, or fail(s) to pay any Indebtedness owing on a demand basis upon demand; or (ii) fail(s) to comply with any of the terms or provisions of any agreement between the undersigned (or any of them) or any guarantor and the Bank, and any such failure continues beyond any applicable grace or cure period, if any, expressly provided with respect thereto; or (iii) become(s) insolvent or the subject of a voluntary or involuntary proceeding in bankruptcy, or a reorganization, arrangement or creditor composition proceeding, (if a business entity) cease(s) doing business as a going concern, (if a natural person) die(s) or become(s) incompetent, (if a partnership) dissolve(s) or any general partner of it dies, becomes incompetent or becomes the subject of a bankruptcy proceeding, or (if a corporation or a limited liability company) is the subject of a dissolution, merger or consolidation; or (b) any warranty or representation made by any of the undersigned or any guarantor in connection with this Note or any of the Indebtedness shall be discovered to be untrue or incomplete; or (c) there is any termination, notice of termination, or breach of any guaranty, pledge, collateral assignment or subordination agreement relating to all or any part of the Indebtedness; or (d) there is any failure by any of the undersigned or any guarantor to pay when due any of its indebtedness (other than to the Bank) or in the observance or performance of any term, covenant or condition in any document evidencing, securing or relating to such indebtedness; or (e) the Bank deems itself insecure, believing that the prospect of payment or performance of this Note or any of the Indebtedness is impaired or shall fear deterioration, removal or waste of any of the Collateral; or (f) there is filed or issued a levy or writ of attachment or garnishment or other like judicial process upon the undersigned (or any of them) or any guarantor or any of the Collateral, including, without limit, any accounts of the undersigned (or any of them) or any guarantor with the Bank; then the Bank, upon the occurrence and at any time during the continuance or existence of any of these events (each a "Default"), may, at its option and without prior notice to the undersigned (or any of them), cease advancing money or extending credit to or for the benefit of the undersigned (or any of them) under this Note or any other agreement between the undersigned (or any of them) and Bank, terminate this Note as to any future liability or obligation of Bank, but without affecting Bank's rights and security interests in any Collateral and the Indebtedness of the undersigned to Bank, declare any or all of the Indebtedness to be immediately due and payable (notwithstanding any provisions contained in the evidence of it to the contrary), sell or liquidate all or any portion of the Collateral, set off against the Indebtedness any amounts owing by the Bank to the undersigned (or any of them), charge interest at the default rate provided in the document evidencing the relevant Indebtedness and exercise any one or more of the rights and remedies granted to the Bank by any agreement with the undersigned (or any of them) or given to it under applicable law.

**THE UNDERSIGNED HEREBY EXPRESSLY ACKNOWLEDGE(S) AND AGREE(S) THAT THIS NOTE IS A DEMAND NOTE AND MATURES UPON ISSUANCE, AND THAT THE INDEBTEDNESS HEREUNDER SHALL BE PAYABLE UPON DEMAND (UNLESS EARLIER PAYMENT IS REQUIRED IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS NOTE), AND THAT BANK MAY, AT ANY TIME IN ITS SOLE AND ABSOLUTE DISCRETION, DEMAND WITH NOTICE AND WITHOUT REASON AND WHETHER OR NOT ANY DEFAULT SHALL HAVE OCCURRED AND/OR EXIST UNDER THIS NOTE, DEMAND THAT THIS NOTE AND THE INDEBTEDNESS HEREUNDER BE IMMEDIATELY PAID IN FULL. THE BANK MAY FROM TIME TO TIME MAKE DEMAND FOR PARTIAL PAYMENTS UNDER THIS NOTE AND THESE DEMANDS SHALL NOT PRECLUDE THE BANK FROM DEMANDING AT ANY TIME THAT THIS NOTE BE IMMEDIATELY PAID IN FULL. FURTHER, THE DEMAND NATURE OF THIS NOTE SHALL NOT BE DEEMED TO BE MODIFIED, LIMITED OR OTHERWISE AFFECTED BY ANY REFERENCE TO ANY DEFAULT IN THIS NOTE, AND TO THE EXTENT THAT THERE ARE ANY REFERENCES TO ANY DEFAULT(S) HEREUNDER, SUCH REFERENCES ARE FOR THE PURPOSE OF PERMITTING BANK TO ACCELERATE ANY INDEBTEDNESS NOT ON A DEMAND BASIS AND TO RECEIVE INTEREST AT THE APPLICABLE DEFAULT RATE PROVIDED IN THE DOCUMENT EVIDENCING THE RELEVANT INDEBTEDNESS.**

The undersigned authorize(s) the Bank to charge any account(s) of the undersigned (or any of them) with the Bank for any and all sums due hereunder when due; provided, however, that such authorization shall not affect any of the undersigned's obligation to pay to the Bank all amounts when due, whether or not any such account balances that are maintained by the undersigned with the Bank are insufficient to pay to the Bank any amounts when due, and to the extent that are insufficient to pay to the Bank all such amounts, the undersigned shall remain liable for any deficiencies until paid in full.

If this Note is signed by two or more parties (whether by all as makers or by one or more as an accommodation party or otherwise), the obligations and undertakings under this Note shall be that of all and any two or more jointly and also of each severally. This Note shall bind the undersigned, and the undersigned's respective heirs, personal representatives, successors and assigns.

The undersigned waive(s) presentment, demand, protest, notice of dishonor, notice of demand or intent to demand, notice of acceleration or intent to accelerate, and all other notices, and agree(s) that no extension or indulgence to the undersigned (or any of them) or release, substitution or nonenforcement of any security, or release or substitution of any of the undersigned, any guarantor or any other party, whether with or without notice, shall affect the obligations of any of the undersigned. The undersigned waive(s) all defenses or right to discharge available under Section 3-605 of the Michigan Uniform Commercial Code and waive(s) all other suretyship defenses or right to discharge. The undersigned agree(s) that the Bank has the right to sell, assign, or grant participations or any interest in, any or all of the Indebtedness, and that, in connection with this right, but without limiting its ability to make other disclosures to the full extent allowable, the Bank may disclose all documents and information which the Bank now or later has relating to the undersigned or the Indebtedness. The undersigned agree(s) that the Bank may provide information relating to this Note or relating to the undersigned to the Bank's parent, affiliates, subsidiaries and service providers.

The undersigned agree(s) to pay or reimburse to Bank, or any other holder or owner of this Note, on demand, any and all costs and expenses of Bank (including, without limit, court costs, legal expenses and reasonable attorneys' fees, whether inside or outside counsel is used, whether or not suit is instituted, and, if suit is instituted, whether at the trial court level, appellate level, in a bankruptcy, probate or administrative proceeding or otherwise ) incurred in connection with the preparation, execution, delivery, amendment,

administration, and performance of this Note and the related documents, or incurred in collecting or attempting to collect this Note or the Indebtedness, or incurred in any other matter or proceeding relating to this Note or the Indebtedness.

The undersigned acknowledge(s) and agree(s) that there are no contrary agreements, oral or written, establishing a term of this Note and agree(s) that the terms and conditions of this Note may not be amended, waived or modified except in a writing signed by an officer of the Bank expressly stating that the writing constitutes an amendment, waiver or modification of this Note. As used in this Note, the word "undersigned" means, individually and collectively, each maker, accommodation party, endorser and other party signing this Note in a similar capacity. If any provision of this Note is unenforceable in whole or part for any reason, the remaining provisions shall continue to be effective.  **THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MICHIGAN, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.**

For the purposes of this Note, the following terms have the following meanings:

"Applicable Margin" means 0.00% per annum.

"Business Day" means any day, other than a Saturday, Sunday or any other day designated as a holiday under Federal or applicable State statute or regulation, on which Bank is open for all or substantially all of its domestic and international business (including dealings in foreign exchange) in Detroit, Michigan.

"Change in Law" means the occurrence, after the date hereof, of any of the following: (i) the adoption or introduction of, or any change in any applicable law, treaty, rule or regulation (whether domestic or foreign) now or hereafter in effect and whether or not applicable to Bank on such date, or (ii) any change in interpretation, administration or implementation thereof of any such law, treaty, rule or regulation by any Governmental Authority, or (iii) the issuance, making or implementation by any Governmental Authority of any interpretation, administration, request, regulation, guideline, or directive (whether or not having the force of law), including any risk-based capital guidelines.  For purposes of this definition, (x) a change in law, treaty, rule, regulation, interpretation, administration or implementation shall include, without limitation, any change made or which becomes effective on the basis of a law, treaty, rule, regulation, interpretation administration or implementation then in force, the effective date of which change is delayed by the terms of such law, treaty, rule, regulation, interpretation, administration or implementation, and (y) the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203, H.R. 4173) and all requests, rules, regulations, guidelines, interpretations or directives promulgated thereunder or issued in connection therewith shall be deemed to be a "Change in Law", regardless of the date enacted, adopted, issued or promulgated, whether before or after the date hereof, and (z) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States regulatory authorities, in each case pursuant to Basel III, shall each be deemed to be a "Change in Law", regardless of the date enacted, adopted, issued or implemented.

"Governmental Authority" means the government of the United States of America or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including, without limitation, any supranational bodies such as the European Union or the European Central Bank).

"Prime Rate" means the per annum interest rate established by Bank as its prime rate for its borrowers, as such rate may vary from time to time, which rate is not necessarily the lowest rate on loans made by Bank at any such time.

No delay or failure of Bank in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise thereof preclude any further exercise thereof, or the exercise of any other power, right or privilege.  The rights of Bank under this Note are cumulative and not exclusive of any right or remedies which Bank would otherwise have, whether by other instruments or by law.

**THE MAXIMUM INTEREST RATE SHALL NOT EXCEED 25% PER ANNUM, OR THE HIGHEST APPLICABLE USURY CEILING, WHICHEVER IS LESS.**

This Note amends, restates, supersedes and replaces that certain Master Revolving Note Variable Rate-Demand dated as of January 1, 1996, made in the principal amount of Fifty Thousand and 00/100 Dollars ($50,000.00) by the undersigned payable to the Bank as amended (the "Prior Note"); provided, however, (i) the execution and delivery by the undersigned of this Note shall not, in any manner or circumstance, be deemed to be a payment of, a novation of or to have terminated, extinguished or discharged any of the undersigned's indebtedness evidenced by the Prior Note, all of which indebtedness shall continue under and shall hereinafter be evidenced and governed by this Note, and (ii) all Collateral and guaranties securing or supporting the Prior Note shall continue to secure and support this Note.

**THE UNDERSIGNED AND THE BANK, BY ACCEPTANCE OF THIS NOTE, ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS NOTE OR THE INDEBTEDNESS.**

**Remainder of Page Intentionally Left Blank**

**Special Provision:**

The undersigned shall pay to Bank an annual maintenance fee in an amount equal to $150.00. This annual maintenance fee shall be due and payable on each anniversary date of this Note.

This Note is dated and shall be effective as of the date set forth above.

BORROWER:

Patricia Gormely Prince, P.C., a Michigan Professional Corporation

By: _____
    Patricia Gormely Prince

Title: _President_____

| 800 W. Long Lake | Bloomfield Hills | MI | United States | 48304 |
|---|---|---|---|---|
| Street Address | City | State | Country | Zip Code |

| For Bank Use Only | | | CCAR # | |
|---|---|---|---|---|
| LOAN OFFICER INITIALS MJS | LOAN GROUP NAME CLCB - Southeast Michigan | BASE RATE INDEX 20021 | OBLIGOR NAME Patricia Gormely Prince, P.C., a Michigan Professional Corporation | |
| LOAN OFFICER I.D. NO. 53100 | LOAN GROUP NO. 91160 | OBLIGOR NO. | NOTE NO. | AMOUNT $200,000.00 |

# EXHIBIT 2



# SECURITY AGREEMENT

As of  5 / 2 7 , 20 1 6 , for value received, the undersigned ("Debtor") pledges, assigns and grants to Comerica Bank ("Bank"), a continuing security interest and lien (any pledge, assignment, security interest or other lien arising hereunder is sometimes referred to herein as a "security interest") in the Collateral (as defined below) to secure payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future Indebtedness (as hereinafter defined) of Patricia Gormely Prince, P.C., a Michigan Professional Corporation (singularly and collectively if more than one party "Borrower") and/or Debtor to the Bank. "Indebtedness" shall mean any and all indebtedness, obligations or liabilities of the Borrower and/or Debtor to the Bank, howsoever arising, evidenced or incurred, whether absolute or contingent, direct or indirect, voluntary or involuntary, liquidated or unliquidated, joint or several, and whether known or unknown, and whether originally payable to the Bank or to a third party and subsequently acquired by the Bank, including, without limitation, (a) any and all direct indebtedness of the Borrower and/or Debtor to the Bank, including indebtedness evidenced by any and all promissory notes; (b) any and all obligations or liabilities of the Borrower and/or Debtor to the Bank arising under any guaranty where the Borrower and/or Debtor has guaranteed the payment of indebtedness owing to the Bank from a third party; (c) any and all obligations or liabilities of the Borrower and/or Debtor to the Bank arising from applications or agreements for the issuance of letters of credit; (d) late charges, loan fees or charges and overdraft indebtedness; (e) any agreement to indemnify the Bank for environmental liability or to clean up hazardous waste; (f) any and all indebtedness, obligations or liabilities for which the Borrower and/or Debtor would otherwise be liable to the Bank were it not for the invalidity, irregularity or unenforceability of them by reason of any bankruptcy, insolvency or other law or order of any kind, or for any other reason, including, without limit, liability for interest and attorneys' fees on, or in connection with, any of the Indebtedness from and after the filing by or against the Borrower and/or Debtor of a bankruptcy petition, whether an involuntary or voluntary bankruptcy case, including, without limitation, all attorneys' fees and costs incurred in connection with motions for relief from stay, cash collateral motions, nondischargeability motions, preference liability motions, fraudulent conveyance liability motions, fraudulent transfer liability motions and all other motions brought by the Borrower, Debtor, the Bank or third parties in any way relating to the Bank's rights with respect to Borrower, Debtor or third party and/or affecting any collateral securing any obligation owed to Bank by the Borrower, Debtor or any third party, probate proceedings, on appeal or otherwise; (g) any and all amendments, modifications, renewals and/or extensions of any of the above, including, without limit, amendments, modifications, renewals and/or extensions which are evidenced by new or additional instruments, documents or agreements; (h) all costs incurred by Bank in establishing, determining, continuing, or defending the validity or priority of its security interest, or in pursuing its rights and remedies under this Agreement or under any other agreement between Bank and the Borrower and/or Debtor or in connection with any proceeding involving Bank as a result of any financial accommodation to Borrower, and/or Debtor; and (i) all costs of collecting Indebtedness, including, without limit, attorneys' fees and costs. Any reference in this Agreement to attorneys' fees shall be deemed a reference to reasonable fees, charges, costs and expenses of counsel and paralegals, whether inside or outside counsel is used, and whether or not a suit or action is instituted, and to court costs if a suit or action is instituted, and whether attorneys' fees or court costs are incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding or otherwise. All costs and expenses shall be payable immediately by the Debtor when incurred by the Bank, immediately upon demand, and until paid shall bear interest at the highest per annum rate applicable to any of the Indebtedness, but not in excess of the maximum rate permitted by law.

Debtor further covenants, agrees, represents and warrants as follows:

1.    **Collateral.** Collateral shall mean all personal property of Debtor including, without limitation, all of the following property Debtor now or later owns or has an interest in, wherever located:

   all Accounts Receivable (for purposes of this Agreement, "Accounts Receivable" consists of all accounts, general intangibles (including, without limit, payment intangibles and software), chattel paper (including, without limit, electronic chattel paper and tangible chattel paper), contract rights, deposit accounts, documents (including, without limit, negotiable documents), instruments (including, without limit, promissory notes) and rights to payment evidenced by chattel paper, documents or instruments, health care insurance receivables, commercial tort claims, letters of credit, letter of credit rights, supporting obligations, money and rights to payment for money or funds advanced or sold),

   all Inventory (including, without limit, returns and repossessions),

   all investment property (including, without limit, securities, securities entitlements, and financial assets), all securities accounts and all investment property contained therein, including, without limitation, all securities and securities entitlements, financial assets, instruments or other property contained in such securities accounts, and all other investment property, financial assets, instruments or other property at any time held or maintained in such securities accounts, together with all investment property, financial assets, instruments or other property at any time substituted for all or for any part of the foregoing, and all interest, dividends, increases, profits, new investment property, financial assets, instruments or other property and or other increments, distributions or rights of any kind received on account of any of the foregoing, and all other income received in connection therewith,

   all Equipment and Fixtures,

   specific items listed below and/or on attached Exhibit A, if any:

   _____

   all Software (for purposes of this Agreement "Software" consists of all (i) computer programs and supporting information provided in connection with a transaction relating to the program, and (ii) computer programs embedded in goods and any supporting information provided in connection with a transaction relating to the program whether or not the program is associated with the goods in such a manner that it customarily is considered part of the goods, and whether or not, by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods, and whether or not the program is embedded in goods that consist solely of the medium in which the program is embedded),

   all general intangibles (including, without limit, software) acquired or used in connection with any of the Collateral,

   all goods, instruments (including, without limit, promissory notes), documents (including, without limit, negotiable documents), policies and certificates of insurance, deposit accounts, deposits, money, investment property or other property (except real property which is not a fixture) which are now or later in possession or control of Bank, or as to which Bank now or later controls possession by documents or otherwise,

   all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including, but not limited to, stock splits, stock rights, voting and preferential rights), products, and all cash and non-cash proceeds of or pertaining to the above, including, without limit, insurance and condemnation proceeds, and cash

or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor, and

all of Debtor's Books and records with respect to any of the foregoing (including, without limit, computer software and the computers and equipment containing said books and records).

In the definition of Collateral, a reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral.

**2.** **Warranties, Covenants and Agreements.** Debtor warrants, covenants and agrees as follows:

2.1 Debtor shall furnish to Bank, in form and at intervals as Bank may request, any information Bank may reasonably request and allow Bank to examine, inspect, and copy any of Debtor's books and records. Debtor shall, at the request of Bank, mark its records and the Collateral to clearly indicate the security interest of Bank under this Agreement.

2.2 At the time any Collateral becomes, or is represented to be, subject to a security interest in favor of Bank, Debtor shall be deemed to have warranted that: (a) Debtor is the lawful owner of the Collateral and has the right and authority to subject it to a security interest granted to Bank; (b) none of the Collateral is subject to any security interest other than that in favor of Bank; (c) there are no financing statements on file in respect of any of the Collateral, other than in favor of Bank; (d) no person, other than Bank, has possession or control (as defined in the Uniform Commercial Code) of any Collateral of such nature that perfection of a security interest may be accomplished by control; and (e) Debtor acquired its rights in the Collateral in the ordinary course of its business.

2.3 Debtor will keep the Collateral free at all times from all claims, liens, security interests and encumbrances other than those in favor of Bank. Debtor will not, without the prior written consent of Bank, sell, transfer or lease, or permit to be sold, transferred or leased, any or all of the Collateral, except for Inventory in the ordinary course of its business and will not return any Inventory to its supplier. Bank or its representatives may, at all reasonable times, inspect the Collateral and may enter upon all premises where the Collateral is kept or might be located. Debtor shall reimburse Bank for all reasonable costs and expenses incurred by Bank in connection with such inspections.

2.4 Debtor will do all acts and will execute and/or deliver or cause to be executed and/or delivered all writings requested by Bank to establish, maintain and continue an exclusive, perfected and first security interest of Bank in the Collateral. By executing this Agreement and becoming bound by the terms hereof, Debtor expressly authorizes the filing of financing statements and any amendments thereto covering the Collateral, and authorizes Bank or its representatives to take such other actions as may be necessary or appropriate to perfect and maintain Bank's security interest in the Collateral. Debtor acknowledges and agrees that Bank has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether realty or personalty, to secure payment of the Indebtedness, and Debtor is not relying upon assets in which the Bank has or may have a lien or security interest for payment of the Indebtedness. In the event that any Collateral, or any of Debtor's books or records relating to any Collateral, is at any time located or stored at or upon leased premises or with a bailee, warehouseman or other third party, Debtor shall promptly provide written notice thereof to Bank and, upon Bank's request, cause such lessor, bailee, warehouseman or other third party to execute and deliver unto Bank such documents, instruments or agreements as Bank may reasonably require, in each case in form and substance acceptable to Bank, pursuant to which such lessor, bailee, warehouseman or other third party acknowledges Bank's security interest in such Collateral and that it is holding such Collateral for the benefit of Bank and permits Bank access to and possession of such Collateral.

2.5 Debtor will pay, within the time that they can be paid without interest or penalty, all taxes, assessments and similar charges which at any time are or may become a lien, charge, or encumbrance upon any Collateral, except to the extent contested in good faith and bonded in a manner satisfactory to Bank. If Debtor fails to pay any of these taxes, assessments, or other charges in the time provided above, Bank has the option (but not the obligation) to do so and Debtor agrees to repay all amounts so expended by Bank immediately upon demand, together with interest at the highest lawful default rate which could be charged by Bank on any Indebtedness. Any such payments made by bank shall not constitute (a) any agreement by Bank to make similar payments in the future, or (b) a waiver by Bank of any Event of Default under this Agreement. Bank need not inquire as to, or contest the validity of, any such taxes, assessments and similar charges, and the usual official notice of such taxes, assessments and similar charges shall be conclusive evidence that the same are validly due and owing. Such payments shall constitute Indebtedness secured by this Agreement.

2.6 Debtor will keep the Collateral in good condition and will protect it from loss, damage, or deterioration from any cause. Debtor has and will maintain at all times (a) with respect to the Collateral, insurance under an "all risk" policy against fire and other risks customarily insured against, and (b) public liability insurance and other insurance as may be required by law or reasonably required by Bank. All of such insurance policies shall be in amount, form and content, and written by companies as may be satisfactory to Bank, and shall contain a lender's loss payable endorsement in favor of and acceptable to Bank. All such policies shall contain a provision whereby they may not be canceled or materially amended except upon thirty (30) days' prior written notice to Bank. Debtor will promptly deliver to Bank, at Bank's request, evidence satisfactory to Bank that such insurance has been so procured and, with respect to casualty insurance, made payable to Bank. Debtor hereby appoints Bank, or any employee or agent of Bank, as Debtor's attorney-in-fact, which appointment is coupled with an interest and irrevocable, and authorizes Bank, or any employee or agent of Bank, on behalf of Debtor, to adjust and compromise any loss under said insurance and to endorse any check or draft payable to Debtor in connection with returned or unearned premiums on said insurance or the proceeds of said insurance, and any amount so collected may be applied toward satisfaction of the Indebtedness; provided, however, that Bank shall not be required hereunder so to act. If Debtor fails to maintain satisfactory insurance, Bank has the option (but not the obligation) to do so and Debtor agrees to repay all amounts so expended to Bank immediately upon demand, together with interest at the highest lawful default rate which could be charged by Bank on any Indebtedness. Such amounts so expended by Bank shall constitute Indebtedness secured by this Agreement.

2.7 On each occasion on which Debtor evidences to Bank the account balances on and the nature and extent of the Accounts Receivable, Debtor shall be deemed to have warranted that, except as otherwise indicated: (a) each of those Accounts Receivable is valid and enforceable without performance by Debtor of any act; (b) each of those account balances are in fact owing; (c) there are no setoffs, recoupments, credits, contra accounts, counterclaims or defenses against any of those Accounts Receivable; (d) as to any Accounts Receivable represented by a note, trade acceptance, draft or other instrument or by any chattel paper or document, the same has/have been endorsed and/or delivered by Debtor to Bank; (e) Debtor has not received with respect to any Account Receivable, any notice of the death of the related account debtor, nor of the dissolution, liquidation, termination of existence, insolvency, business failure, appointment of a receiver for, assignment for the benefit of creditors by, or filing of a petition in bankruptcy by or against, the account debtor; and (f) as to each Account Receivable, except as may be expressly permitted by Bank to the contrary in another document, the account debtor is not an affiliate of Debtor, the United States of America or any department, agency or instrumentality of it, or a citizen or resident of any jurisdiction outside of the United States. Debtor will do all acts and will execute all writings requested by Bank to perform, enforce performance of, and collect all Accounts Receivable. Debtor will deliver to Bank such documents, instruments and other writings evidencing or otherwise relating to the Accounts Receivable as Bank may reasonably request

from time to time. Debtor shall neither make nor permit any modification, compromise or substitution for any Account Receivable without the prior written consent of Bank. Bank may at any time and from time to time verify Accounts Receivable directly with account debtors or by other methods acceptable to Bank without notifying Debtor. Debtor agrees, at Bank's request, to arrange or cooperate with Bank in arranging for verification of Accounts Receivable.

2.8   Debtor at all times shall be in strict compliance with all applicable laws, including, without limit, any laws, ordinances, directives, orders, statutes, or regulations an object of which is to regulate or improve health, safety, or the environment ("Environmental Laws").

2.9   If Bank, acting in its sole discretion, redelivers Collateral to Debtor or Debtor's designee for the purpose of (a) the ultimate sale or exchange thereof; or (b) presentation, collection, renewal, or registration of transfer thereof; or (c) loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with it preliminary to sale or exchange; such redelivery shall be in trust for the benefit of Bank and shall not constitute a release of Bank's security interest in it or in the proceeds or products of it, unless Bank specifically so agrees in writing. If Debtor requests any such redelivery, Debtor expressly authorizes Bank to file a financing statement in form and substance satisfactory to Bank in respect of such Collateral. Any proceeds of Collateral coming into Debtor's possession as a result of any such redelivery shall be held in trust for Bank and immediately delivered to Bank for application on the Indebtedness. Bank may (in its sole discretion) deliver any or all of the Collateral to Debtor, and such delivery by Bank shall discharge Bank from all liability or responsibility for such Collateral. Bank, at its option, may require delivery of any Collateral to Bank at any time with such endorsements or assignments of the Collateral as Bank may request.

2.10   At any time and without notice, Bank may, as to any Collateral: (a) cause any or all of such Collateral to be transferred to its name or to the name of its nominees; (b) receive or collect, by legal proceedings or otherwise, all dividends, interest, principal payments and other sums and all other distributions at any time payable or receivable on account of such Collateral, and hold the same as Collateral, or apply the same to the Indebtedness, the manner and distribution of the application to be in the sole discretion of Bank; (c) enter into any extension, subordination, reorganization, deposit, merger or consolidation agreement or any other agreement relating to or affecting such Collateral, and deposit or surrender control of such Collateral, and accept other property in exchange for such Collateral and hold or apply the property or money so received pursuant to this Agreement; and (d) take such actions in its own name or in Debtor's name as Bank, in its sole discretion, deems necessary or appropriate to establish exclusive control (as defined in the Uniform Commercial Code) over any Collateral of such nature that perfection of the Bank's security interest may be accomplished by control.

2.11   Bank may assign any of the Indebtedness and deliver any or all of the Collateral to its assignee, who then shall have with respect to Collateral so delivered all the rights and powers of Bank under this Agreement, and after that Bank shall be fully discharged from all liability and responsibility with respect to Collateral so delivered.

2.12   Debtor agrees that no security or guarantee now or later held by Bank for the payment of any indebtedness, whether from Borrower, any guarantor or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the security interests or other rights or interests of Bank under this Agreement or any of the obligations of Debtor under this Agreement, and Bank, in its sole discretion, without notice to Debtor, may release, exchange, modify, enforce and otherwise deal with any security or guaranty without affecting in any manner the unconditional pledge of Debtor under this Agreement.

2.13   Debtor shall defend, indemnify and hold harmless Bank, its employees, agents, shareholders, affiliates, officers, and directors from and against any and all claims, damages, fines, expenses, liabilities or causes of action of whatever kind, including, without limit, consultant fees, legal expenses, and attorneys' fees, suffered by any of them as a direct or indirect result of any actual or asserted violation of any law, including, without limit, Environmental Laws, or of any remediation relating to any property required by any law, including, without limit, Environmental Laws, except and to the extent (but only to the extent) caused by Bank's gross negligence or willful misconduct. The obligations contained in this Section shall survive termination of this Agreement.

2.14   Debtor delivers this Agreement based solely on Debtor's independent investigation of (or decision not to investigate) the financial condition of Borrower and is not relying on any information furnished by Bank. Debtor assumes full responsibility for obtaining any further information concerning the Borrower's financial condition, the status of the Indebtedness or any other matter which the Debtor may deem necessary or appropriate now or later. Debtor waives any duty on the part of Bank, and agrees that Debtor is not relying upon nor expecting Bank to disclose to Debtor any fact now or later known by Bank, whether relating to the operations or condition of Borrower, the existence, liabilities or financial condition of any guarantor of the Indebtedness, the occurrence of any default with respect to the Indebtedness, or otherwise, notwithstanding any effect such fact may have upon Debtor's risk or Debtor's rights against Borrower. Debtor knowingly accepts the full range of risk encompassed in this Agreement, which risk includes, without limit, the possibility that Borrower may incur Indebtedness to Bank after the financial condition of Borrower, or Borrower's ability to pay debts as they mature, has deteriorated.

2.15   Debtor agrees that no security or guarantee now or later held by Bank for the payment of any indebtedness, whether from Borrower, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the security interests or other interests granted by Debtor to or in favor of Bank under this Agreement, or any obligations of Debtor hereunder or pursuant hereto, and Bank, in its sole discretion, without notice to Debtor, may release, exchange, modify, enforce and otherwise deal with any security or guaranty without affecting in any manner such security interests or other interests of Bank or any such obligations of Debtor under this Agreement. Debtor acknowledges and agrees that Bank has no obligation to acquire or perfect any lien on or security interest in any assets, whether realty or personalty, or to obtain any guaranty to secure payment of the Indebtedness, and Debtor is not relying upon any guaranty which Bank has or may have or assets in which Bank has or may have a lien or security interest for payment of the Indebtedness.

2.16   Debtor absolutely, unconditionally, knowingly, and expressly waives:

(a)   Notice of: (i) acceptance hereof; (ii) any loans or other financial accommodations made or extended to Borrower or the creation or existence of any Indebtedness; (iii) notice of the amount of the Indebtedness, subject, however, to Debtor's right to make inquiry of Bank to ascertain the amount of the Indebtedness at any reasonable time; and (iv) any default or breach under the terms of any of the Indebtedness; and all other notices (except if such notice is specifically required to be given to Debtor hereunder) and demands to which Debtor might otherwise be entitled.

(b)   Its right to require Bank to institute suit against, or to exhaust any rights and remedies which Bank has or may have against, Borrower or any third party, or against any collateral for the Indebtedness provided by Borrower or any third party. In this regard, Debtor is bound to the payment of all Indebtedness whether now existing or hereafter accruing, as fully as if such Indebtedness were directly owing to Bank by Debtor. Debtor waives any defense arising by reason of any disability or other defense (other than the defense that the Indebtedness shall have been fully and finally performed and indefeasibly paid) of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower in respect thereof.

(c) (i) Any rights to assert against Bank any defense (legal or equitable), set-off, counterclaim, or claim which Debtor may now or at any time hereafter have against the Borrower or any other party liable to Bank; (ii) any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of the Indebtedness or any security therefor; (iii) any defense Debtor has to performance hereunder, and any right Debtor has to be exonerated arising by reason of: the impairment or suspension of Bank's rights or remedies against Borrower; the alteration by Bank of the Indebtedness; any discharge of the Indebtedness by operation of law as a result of Bank's intervention or omission; or the acceptance by Bank of anything in partial satisfaction of the Indebtedness; (iv) the benefit of any statute of limitations affecting Debtor's liability hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the Indebtedness shall similarly operate to defer or delay the operation of such statute of limitations applicable to Debtor's liability hereunder.

(d) Any defense arising by reason of or deriving from (i) any claim or defense based upon an election of remedies by Bank; or (ii) any election by Bank under the Bankruptcy Code Section 1111(b) to limit the amount of, or any collateral securing, its claim against Borrower.

2.17   Without notice to or by Debtor, and without affecting or impairing the obligations of Debtor hereunder, Bank may, by action or inaction:

(a) compromise, settle, extend the duration or the time for the payment of, or discharge the performance of, or may refuse to or otherwise not enforce this Agreement, the Indebtedness, or any part thereof, with respect to Borrower or any other person;

(b) release Borrower or any other person or grant other indulgences to Borrower or any other person in respect thereof;

(c) amend or modify in any manner and at any time (or from time to time) any documents, instruments or agreements evidencing, governing, securing or otherwise relating to any of the Indebtedness; or

(d) release or substitute any guarantor, if any, of the Indebtedness, or enforce, exchange, release, or waive any security for the Indebtedness or any guaranty of the Indebtedness, or any portion thereof.

2.18   Bank shall have all of the rights to seek recourse against Debtor to the fullest extent provided for herein.  No election by Bank to proceed in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of the Bank's right to proceed in any other form of action or proceeding or against other parties, unless the Bank has expressly waived such right in writing.  Specifically, but without limiting the generality of the foregoing, no action or proceeding by Bank under any document or instrument evidencing the Indebtedness shall serve to diminish the liability of the Debtor under this Agreement, except to the extent that Bank finally and unconditionally shall have realized indefeasible payment by such action or proceeding.

## 3.   Collection of Proceeds.

3.1   Debtor agrees to collect and enforce payment of all Collateral until Bank shall direct Debtor to the contrary. Immediately upon notice to Debtor by Bank and at all times after that, Debtor agrees to fully and promptly cooperate and assist Bank in the collection and enforcement of all Collateral and to hold in trust for Bank all payments received in connection with Collateral and from the sale, lease or other disposition of any Collateral, all rights by way of suretyship or guaranty and all rights in the nature of a lien or security interest which Debtor now or later has regarding Collateral. Immediately upon and after such notice, Debtor agrees to (a) endorse to Bank and immediately deliver to Bank all payments received on Collateral or from the sale, lease or other disposition of any Collateral or arising from any other rights or interests of Debtor in the Collateral, in the form received by Debtor without commingling with any other funds, and (b) immediately deliver to Bank all property in Debtor's possession or later coming into Debtor's possession through enforcement of Debtor's rights or interests in the Collateral. Debtor irrevocably authorizes Bank or any Bank employee or agent to endorse the name of Debtor upon any checks or other items which are received in payment for any Collateral, and to do any and all things necessary in order to reduce these items to money. Bank shall have no duty as to the collection or protection of Collateral or the proceeds of it, nor as to the preservation of any related rights, beyond the use of reasonable care in the custody and preservation of Collateral in the possession of Bank. Debtor agrees to take all steps necessary to preserve rights against prior parties with respect to the Collateral. Nothing in this Section 3.1 shall be deemed a consent by Bank to any sale, lease or other disposition of any Collateral.

3.2   Debtor agrees that immediately upon Bank's request (whether or not any Event of Default exists), the Indebtedness shall be on a "remittance basis" in accordance with the following. In connection therewith, Debtor shall at its sole expense establish and maintain (and Bank, at Bank's option, may establish and maintain at Debtor's expense):

(a) A United States Post Office lock box (the "Lock Box"), to which Bank shall have exclusive access and control. Debtor expressly authorizes Bank, from time to time, to remove contents from the Lock Box, for disposition in accordance with this Agreement. Debtor agrees to notify all account debtors and other parties obligated to Debtor that all payments made to Debtor (other than payments by electronic funds transfer) shall be remitted, for the credit of Debtor, to the Lock Box, and Debtor shall include a like statement on all invoices; and

(b) A non-interest bearing deposit account with Bank which shall be titled as designated by Bank (the "Cash Collateral Account") to which Bank shall have exclusive access and control. Debtor agrees to notify all account debtors and other parties obligated to Debtor that all payments made to Debtor by electronic funds transfer shall be remitted to the Cash Collateral Account, and Debtor, at Bank's request, shall include a like statement on all invoices. Debtor shall execute all documents and authorizations as required by Bank to establish and maintain the Lock Box and the Cash Collateral Account.

3.3   All items or amounts which are remitted to the Lock Box, to the Cash Collateral Account, or otherwise delivered by or for the benefit of Debtor to Bank on account of partial or full payment of, or with respect to, any Collateral shall, at Bank's option, (a) be applied to the payment of the Indebtedness, whether then due or not, in such order or at such time of application as Bank may determine in its sole discretion, or, (b) be deposited to the Cash Collateral Account. Debtor agrees that Bank shall not be liable for any loss or damage which Debtor may suffer as a result of Bank's processing of items or its exercise of any other rights or remedies under this Agreement, including without limitation indirect, special or consequential damages, loss of revenues or profits, or any claim, demand or action by any third party arising out of or in connection with the processing of items or the exercise of any other rights or remedies under this Agreement. Debtor agrees to indemnify and hold Bank harmless from and against all such third party claims, demands or actions, and all related expenses or liabilities, including, without limitation, attorney's fees, except to the extent (but only to the extent) caused by Bank's gross negligence or willful misconduct.

## 4.   Defaults, Enforcement and Application of Proceeds.

4.1    The occurrence or existence of any of the following conditions or events shall constitute an "Event of Default" under this Agreement:

    (a)    Any failure to pay the indebtedness or any other Indebtedness when due, or such portion of it as may be due, by acceleration or otherwise; or

    (b)    Any failure or neglect to comply with, or breach of or default under, any term or provision of this Agreement; or any failure or neglect to comply with, or breach of or default under, any term or provision of any other agreement or commitment between Borrower, Debtor or any guarantor of any of the Indebtedness ("Guarantor") and Bank, and any such failure, neglect, breach or default continues beyond any applicable grace or cure period (if any) expressly provided with respect thereto; or

    (c)    Any warranty, representation, financial statement, or other information made, given or furnished to Bank by or on behalf of Borrower, Debtor or any Guarantor shall be, or shall prove to have been, false or materially misleading when made, given, or furnished; or

    (d)    Any loss, theft, substantial damage or destruction to or of any Collateral, or the issuance or filing of any attachment, levy, garnishment or the commencement of any proceeding in connection with any Collateral or of any other judicial process of, upon or in respect of Borrower, Debtor, any Guarantor, or any Collateral; or

    (e)    Sale or other disposition by Borrower, Debtor or any Guarantor of any substantial portion of its assets or property or voluntary suspension of the transaction of business by Borrower, Debtor or any Guarantor, or death, dissolution, termination of existence, merger, consolidation, insolvency, business failure, or assignment for the benefit of creditors of or by Borrower, Debtor or any Guarantor; or commencement of any proceedings under any state or federal bankruptcy or insolvency laws or laws for the relief of debtors by or against Borrower, Debtor or any Guarantor; or the appointment of a receiver, trustee, court appointee, sequestrator or otherwise, for all or any part of the property of Borrower, Debtor or any Guarantor; or

    (f)    Bank deems the margin of Collateral insufficient or itself insecure, in good faith believing that the prospect of payment or performance of the Indebtedness or performance of this Agreement is impaired or shall fear deterioration, removal, or waste of Collateral; or

    (g)    Any default or event of default shall occur under any instrument, agreement or other document evidencing, securing or otherwise relating to any of the Indebtedness.

4.2    Upon the occurrence and at any time during the continuance or existence of any Event of Default, Bank may at its discretion and without prior notice to Debtor declare any or all of the Indebtedness to be immediately due and payable, and shall have and may exercise any right or remedy available to it including, without limitation, any one or more of the following rights and remedies:

    (a)    Exercise all the rights and remedies upon default, in foreclosure and otherwise, available to secured parties under the provisions of the Uniform Commercial Code and other applicable law;

    (b)    Institute legal proceedings to foreclose upon the lien and security interest granted by this Agreement, to recover judgment for all amounts then due and owing as Indebtedness, and to collect the same out of any Collateral or the proceeds of any sale of it;

    (c)    Institute legal proceedings for the sale, under the judgment or decree of any court of competent jurisdiction, of any or all Collateral; and/or

    (d)    Personally or by agents, attorneys, or appointment of a receiver, enter upon any premises where Collateral may then be located, and take possession of all or any of it and/or render it unusable; and without being responsible for loss or damage to such Collateral, hold, operate, sell, ship, reclaim, recover, store, finish, maintain, repair, lease, or dispose of all or any Collateral at one or more public or private sales, leasings or other dispositions, at places (including, without limit, Debtor's premises) and times and on terms and conditions as Bank may deem fit, without any previous demand or advertisement; and except as provided in this Agreement, all notice of sale, lease or other disposition, and advertisement, and other notice or demand, any right or equity of redemption, and any obligation of a prospective purchaser or lessee to inquire as to the power and authority of Bank to sell, lease, or otherwise dispose of the Collateral or as to the application by Bank of the proceeds of sale or otherwise, which would otherwise be required by, or available to Debtor under, applicable law are expressly waived by Debtor to the fullest extent permitted.

    At any sale pursuant to this Section 4.2, whether under the power of sale, by virtue of judicial proceedings or otherwise, it shall not be necessary for Bank or a public officer under order of a court to have present physical or constructive possession of Collateral to be sold. The recitals contained in any conveyances and receipts made and given by Bank or the public officer to any purchaser at any sale made pursuant to this Agreement shall, to the extent permitted by applicable law, conclusively establish the truth and accuracy of the matters stated (including, without limit, as to the amounts of the principal of and interest on the Indebtedness, the accrual and nonpayment of it and advertisement and conduct of the sale); and all prerequisites to the sale shall be presumed to have been satisfied and performed. Upon any sale of any Collateral, the receipt of the officer making the sale under judicial proceedings or of Bank shall be sufficient discharge to the purchaser for the purchase money, and the purchaser shall not be obligated to see to the application of the money. Any sale of any Collateral under this Agreement shall be a perpetual bar against Debtor with respect to that Collateral. At any sale or other disposition of the Collateral pursuant to this Section 4.2, Bank disclaims all warranties which would otherwise be given under the Uniform Commercial Code, including, without limit, a disclaimer of any warranty relating to title, possession, quiet enjoyment or the like, and Bank may communicate these disclaimers to a purchaser at such disposition. This disclaimer of warranties will not render the sale commercially unreasonable. Bank may, in its discretion, bid and purchase any of the Collateral at any sale pursuant to this Section 4.2.

4.3    Debtor shall at the request of Bank, notify the account debtors or obligors of Bank's security interest in the Collateral and direct payment of it to Bank. Bank may, itself, upon the occurrence and at any time during the continuance or existence of any Event of Default, so notify the account debtors or obligors of Bank's security interest in the Collateral and direct such account debtors or obligors to make payments directly to Bank. At the request of Bank, whether or not an Event of Default shall have occurred, Debtor shall immediately take such actions as the Bank shall request to establish exclusive control (as defined in the Uniform Commercial Code) by Bank over any Collateral which is of such a nature that perfection of a security interest may be accomplished by control.

4.4    The proceeds of any sale or other disposition of Collateral authorized by this Agreement shall be applied by Bank first upon all expenses authorized by the Uniform Commercial Code and all reasonable attorney fees and legal expenses incurred by Bank; the balance of the proceeds of the sale or other disposition shall be applied in the payment of the Indebtedness, first to interest, then to principal, then to remaining Indebtedness and the surplus, if any, shall be paid over to Debtor or to such

other person(s) as may be entitled to it under applicable law. Debtor shall remain liable for any deficiency, which it shall pay to Bank immediately upon demand. Debtor agrees that Bank shall be under no obligation to accept any noncash proceeds in connection with any sale or disposition of Collateral unless failure to do so would be commercially unreasonable. If Bank agrees in its sole discretion to accept noncash proceeds (unless the failure to do so would be commercially unreasonable), Bank may ascribe any commercially reasonable value to such proceeds. Without limiting the foregoing, Bank may apply any discount factor in determining the present value of proceeds to be received in the future or may elect to apply proceeds to be received in the future only as and when such proceeds are actually received in cash by Bank.

4.5     Nothing in this Agreement is intended, nor shall it be construed, to preclude Bank from pursuing any other right or remedy provided by law or in equity for the collection of the Indebtedness or for the recovery of any other sum to which Bank may be entitled for the breach of this Agreement by Debtor. Nothing in this Agreement shall reduce or release in any way any rights or security interests of Bank contained in any existing agreement between Borrower, Debtor or any Guarantor and Bank.

4.6     No waiver of default or consent to any act by Debtor shall be effective unless in writing and signed by an authorized officer of Bank. No waiver of any default or forbearance on the part of Bank in enforcing any of its rights under this Agreement shall operate as a waiver of any other default or of the same default on a future occasion or of any rights.

4.7     Debtor (a) irrevocably appoints Bank or any agent of Bank (which appointment is coupled with an interest) the true and lawful attorney-in-fact of Debtor (with full power of substitution) in the name, place and stead of, and at the expense of, Debtor and (b) authorizes Bank or any agent of Bank, in its own name, at Debtor's expense, to do any of the following, as Bank, in its sole discretion, deems appropriate:

     (i)    to demand, receive, sue for, and give receipts or acquittances for any moneys due or to become due on any Collateral and to endorse any item representing any payment on or proceeds of the Collateral;

     (ii)    to execute and/or file in the name of and on behalf of Debtor all financing statements or other filings deemed necessary or desirable by Bank to evidence, perfect, or continue the security interests granted in this Agreement; and

     (iii)    to do and perform any act on behalf of Debtor permitted or required under this Agreement.

4.8     Upon the occurrence and at any time during the continuance or existence of an Event of Default, Debtor also agrees, upon request of Bank, to assemble the Collateral and make it available to Bank at any place designated by Bank which is reasonably convenient to Bank and Debtor. Bank may take any and all actions that it deems necessary or appropriate to protect the Collateral and its security interest in the Collateral, and all costs and expenses for the same shall be added to the Indebtedness and shall be payable upon demand. All risks of loss, damage or destruction to the Collateral shall be borne by Debtor.

4.9     The following shall be the basis for any finder of fact's determination of the value of any Collateral which is the subject matter of a disposition giving rise to a calculation of any surplus or deficiency under Section 9.615(f) of the Uniform Commercial Code (as in effect on or after July 1, 2001): (a) the Collateral which is the subject matter of the disposition shall be valued in an "as is" condition as of the date of the disposition, without any assumption or expectation that such Collateral will be repaired or improved in any manner, (b) the valuation shall be based upon an assumption that the transferee of such Collateral desires a resale of the Collateral for cash promptly (but no later than 30 days) following the disposition; (c) all reasonable closing costs customarily borne by the seller in commercial sales transactions relating to property similar to such Collateral shall be deducted, including, without limitation, brokerage commissions, tax prorations, attorney's fees, whether inside or outside counsel is used, and marketing costs; (d) the value of the Collateral which is the subject matter of the disposition shall be further discounted to account for any estimated holding costs associated with maintaining such Collateral pending sale (to the extent not accounted for in (c) above), and other maintenance, operational and ownership expenses; and (e) any expert opinion testimony given or considered in connection with a determination of the value of such Collateral must be given by persons having at least 5 years experience in appraising property similar to the Collateral and who have conducted and prepared a complete written appraisal of such Collateral taking into consideration the factors set forth above. The "value" of any such Collateral shall be a factor in determining the amount of proceeds which would have been realized in a disposition to a transferee other than a secured party, a person related to a secured party or a secondary obligor under Section 9.615(f) of the Uniform Commercial Code.

**5.   Miscellaneous.**

5.1     Until Bank is advised in writing by Debtor to the contrary, all notices, requests and demands required under this Agreement or by law shall be given to, or made upon, Debtor at the following address:

800 W. Long Lake
STREET ADDRESS

| Bloomfield Hills | MI | 48304 | Oakland |
|---|---|---|---|
| CITY | STATE | ZIP CODE | COUNTY |

5.2     Debtor will give Bank not less than ninety (90) days' prior written notice of all contemplated changes in Debtor's name, location, chief executive office, principal place of business, and/or location of any Collateral, but the giving of this notice shall not cure any Event of Default caused by this change.

5.3     Bank assumes no duty of performance or other responsibility under any contracts contained within the Collateral.

5.4     Bank has the right to sell, assign, transfer, negotiate or grant participations in any interest in, any or all of the Indebtedness and any related obligations, including without limit this Agreement. In connection with the above, but without limiting its ability to make other disclosures to the full extent allowable, Bank may disclose all documents and information which Bank now or later has relating to Debtor, the Indebtedness or this Agreement, however obtained. Debtor further agrees that Bank may provide information relating to this Agreement or relating to Debtor or the Indebtedness to the Bank's parent, affiliates, subsidiaries, and service providers.

5.5     In addition to Bank's other rights, any indebtedness owing from Bank to Debtor (including, without limitation, amounts maintained by Debtor as deposit accounts (as such term is defined in the Uniform Commercial Code) with Bank) can be set off and applied by Bank on any Indebtedness at any time(s) either before or after maturity or demand without notice to anyone. Any such action shall not constitute (a) acceptance of collateral in discharge of any portion of the Indebtedness, (b) a retention of collateral in satisfaction of an obligation within the meaning of the Uniform Commercial Code, or (c) if the Indebtedness is secured by California real estate, an action under California Code of Civil Procedure 726.

5.6     Debtor, to the extent not expressly prohibited by applicable law, waives any right to require the Bank to: (a) proceed against any person or property; (b) give notice of the terms, time and place of any public or private sale of personal property security held from Borrower or any other person, or otherwise comply with the provisions of Section 9.504 of the Uniform

Commercial Code in effect prior to July 1, 2001 or its successor provisions thereafter; or (c) pursue any other remedy in the Bank's power. Debtor waives notice of acceptance of this Agreement and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment of any Indebtedness, any and all other notices to which the Debtor might otherwise be entitled, and diligence in collecting any Indebtedness, and agrees that the Bank may, once or any number of times, modify the terms of any Indebtedness, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Indebtedness, or permit Borrower to incur additional Indebtedness, all without notice to Debtor and without affecting in any manner the unconditional obligation of Debtor under this Agreement. Debtor unconditionally and irrevocably waives each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of Debtor under this Agreement, and acknowledges that such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from Debtor now or later securing the Indebtedness, and acknowledges that as of the date of this Agreement no such defense or setoff exists. Debtor ratifies and approves all acts of Bank acting in its capacity as Debtor's attorney-in-fact under this Agreement. Neither Bank nor its attorney-in-fact will be liable for any acts or omissions or for any error of judgment or mistake of fact or law.

5.7   Debtor hereby absolutely, unconditionally, knowingly, and expressly waives any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from Borrower or any other person any amounts paid or the value of any Collateral given by Debtor pursuant to this Agreement until such time as all of the Indebtedness has been fully paid.

5.8   In the event that applicable law shall obligate Bank to give prior notice to Debtor of any action to be taken under this Agreement, Debtor agrees that a written notice given to Debtor at least ten (10) days before the date of the act shall be reasonable notice of the act and, specifically, reasonable notification of the time and place of any public sale or of the time after which any private sale, lease, or other disposition is to be made, unless a shorter notice period is reasonable under the circumstances (including, without limitation, if the Collateral, or any portion thereof, is perishable or threatens to decline speedily in value). A notice shall be deemed to be given under this Agreement when delivered to Debtor or when placed in an envelope addressed to Debtor and deposited, with postage prepaid, in a post office or official depository under the exclusive care and custody of the United States Postal Service or delivered to an overnight courier. The mailing shall be by overnight courier, certified, or first class mail.

5.9   Notwithstanding any prior revocation, termination, surrender, or discharge of this Agreement in whole or in part, the effectiveness of this Agreement shall automatically continue or be reinstated, as the case may be, in the event that any payment received or credit given by Bank in respect of the Indebtedness is returned, disgorged, or rescinded under any applicable law, including, without limitation, bankruptcy or insolvency laws, in which case this Agreement, shall be enforceable against Debtor as if the returned, disgorged, or rescinded payment or credit had not been received or given by Bank, and whether or not Bank relied upon this payment or credit or changed its position as a consequence of it. In the event of continuation or reinstatement of this Agreement, Debtor agrees upon demand by Bank to execute and deliver to Bank those documents which Bank determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of Debtor to do so shall not affect in any way the reinstatement or continuation.

5.10   This Agreement and all the rights and remedies of Bank under this Agreement shall inure to the benefit of Bank's successors and assigns and to any other holder who derives from Bank title to or an interest in the Indebtedness or any portion of it, and shall bind Debtor and the heirs, legal representatives, successors, and assigns of Debtor. Nothing in this Section 5.10 is deemed a consent by Bank to any assignment by Debtor.

5.11   If there is more than one Debtor, each Debtor agrees that all undertakings, warranties and covenants made by Debtor and all rights, powers and authorities given to or conferred upon Bank are made or given jointly and severally, and each reference to the term Debtor shall mean each and every Debtor a party hereto, individually and collectively, jointly and severally.

5.12   Except as otherwise provided in this Agreement, all terms in this Agreement have the meanings assigned to them in Article 9 (or, absent definition in Article 9, in any other Article) of the Uniform Commercial Code, as those meanings may be amended, revised or replaced from time to time. "Uniform Commercial Code" means Act No. 174 of the Michigan Public Acts of 1962, as amended, revised or replaced from time to time, including without limit as amended by Act No. 348 of the Michigan Public Acts of 2000. Notwithstanding the foregoing, the parties intend that the terms used herein which are defined in the Uniform Commercial Code have, at all times, the broadest and most inclusive meanings possible. Accordingly, if the Uniform Commercial Code shall in the future be amended or held by a court to define any term used herein more broadly or inclusively than the Uniform Commercial Code in effect on the date of this Agreement, then such term, as used herein, shall be given such broadened meaning. If the Uniform Commercial Code shall in the future be amended or held by a court to define any term used herein more narrowly, or less inclusively, than the Uniform Commercial Code in effect on the date of this Agreement, such amendment or holding shall be disregarded in defining terms used in this Agreement.

5.13   No single or partial exercise, or delay in the exercise, of any right or power under this Agreement, shall preclude other or further exercise of the rights and powers under this Agreement. The unenforceability of any provision of this Agreement shall not affect the enforceability of the remainder of this Agreement. This Agreement constitutes the entire agreement of Debtor and Bank with respect to the subject matter of this Agreement. No amendment or modification of this Agreement shall be effective unless the same shall be in writing and signed by Debtor and an authorized officer of Bank. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MICHIGAN, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

5.14   To the extent that any of the Indebtedness is payable upon demand, nothing contained in this Agreement shall modify the terms and conditions of that Indebtedness nor shall anything contained in this Agreement prevent Bank from making demand, without notice and with or without reason, for immediate payment of any or all of that Indebtedness at any time(s), whether or not an Event of Default has occurred.

5.15   Debtor represents and warrants that Debtor's exact name is the name set forth in this Agreement. Debtor further represents and warrants the following and agrees that Debtor is, and at all times shall be, located in the following place:

Debtor is a registered organization which is organized under the laws of one of the states comprising the United States (e.g. corporation, limited partnership, registered limited liability partnership or limited liability company), and Debtor is located (as determined pursuant to the Uniform Commercial Code) in the state under the laws of which it was organized, which is (state): **Michigan.**

The Collateral, and Debtor's books and records pertaining to the Collateral, is located at and shall be maintained at the following location(s) and/or the location(s) identified on an Exhibit attached hereto (if any):

800 W. Long Lake
STREET ADDRESS

| Bloomfield Hills | MI | 48304 | Oakland |
|---|---|---|---|
| CITY | STATE | ZIP CODE | COUNTY |

5.16  A carbon, photographic or other reproduction of this Agreement shall be sufficient as a financing statement under the Uniform Commercial Code and may be filed by Bank in any filing office.

5.17  This Agreement shall be terminated only by the filing of a termination statement in accordance with the applicable provisions of the *Uniform Commercial Code.*

5.18  Debtor agrees to reimburse the Bank upon demand for any and all costs and expenses (including, without limit, court costs, legal expenses and reasonable attorneys' fees, whether inside or outside counsel is used, whether or not suit is instituted and, if suit is instituted, whether at the trial court level, appellate level, in a bankruptcy, probate or administrative proceeding or otherwise) incurred in enforcing or attempting to enforce this Agreement or any of the duties or obligations of Debtor under this Agreement or in establishing, determining, continuing or defending the validity or priority of Bank's security interest under this Agreement or in exercising or attempting to exercise any right or remedy under this Agreement or incurred in any other matter or proceeding relating to this Security Agreement.

5.19  All payments to be made hereunder by Debtor shall be made in lawful money of the United States of America at the time of payment, shall be made in immediately available funds, and shall be made without deduction (whether for taxes or otherwise) or offset.

5.20  No right or remedy under this Agreement is intended to be exclusive of any other remedy, but each and every right and remedy shall be cumulative and in addition to any and every other right or remedy given under this Agreement, under any other agreement(s) and those provided by law or in equity.  No exercise by Bank of one right or remedy shall be deemed to be an election.  No delay or omission by Bank to exercise any right under this Agreement shall impair any such right nor be construed to be a waiver thereof.  No failure on the part of Bank to exercise, and no delay in exercising, any right hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

5.21  Debtor hereby acknowledges and agrees that the references to Borrower set forth herein shall be applicable to the extent that Debtor and Borrower are not the same person or entity.

6.  **DEBTOR AND BANK ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE INDEBTEDNESS.**

IN WITNESS WHEREOF, Debtor has executed this Agreement as of the day and year first above written.

DEBTOR:

Patricia Gormely Prince, P.C., a Michigan Professional Corporation

By: _____
    Patricia Gormely Prince

Title: _President_____


**FOR BANK USE ONLY:**

Borrower(s):

Patricia Gormely Prince, P.C., a Michigan Professional Corporation
Dynamic Security Agreement

# EXHIBIT 3

| 1. NO. OF ADDITIONAL SHEETS | STATE | COUNTY | STATE BILLING ACCT. NO. | FOR FILING OFFICER |
|---|---|---|---|---|
| | | | 2251UC | (Date, Time, Number, and Filing Office) |

| 2. DEBTOR(S) (LAST NAME FIRST) AND ADDRESS(ES) | 3. SECURED PARTY(IES) AND ADDRESS(ES) | |
|---|---|---|
| Patricia Gormely Prince, P.C.<br>1500 Woodward Avenue, Suite 300<br>Bloomfield Hills, MI   48303<br><br>Tax I.D. No.   38-3028257 | Comerica Bank<br>100 Renaissance Center<br>Detroit, Michigan 48243<br>Attn: Loan Documentation Review | RECEIVED<br>U.C.C. UNIT 9:00 A.M.<br><br>2 27 93   C790240<br><br>RICHARD H. AUSTIN<br>SECRETARY OF STATE<br>LANSING, MICHIGAN 48918 |

| 4. NAME AND ADDRESS(ES) OF ASSIGNEE(S) (IF ANY) | X CHECK IF APPLICABLE |
|---|---|
| | ☒ 5. Products of collateral are also covered.<br>☐ 6. Collateral was brought into this state subject to a security interest in another jurisdiction. |

7. THIS FINANCING STATEMENT COVERS THE FOLLOWING TYPES (OR ITEMS) OF PROPERTY.

All of the following property now owned or later acquired by Debtor, wherever located: all accounts, general intangibles, chattel paper, contract rights, deposit accounts, documents, instruments, inventory, returned or repossessed goods, records (including without limit computer software) pertaining to the foregoing property, and all products and proceeds of any of the foregoing (whether cash or non-cash proceeds), including without limitation insurance and condemnation proceeds.

| Patricia Gormely Prince, P.C. | Comerica Bank |
|---|---|
| By: _____ | By: Julie A. Quattro |
| Its: President | SIGNATURE OF SECURED PARTY OR ASSIGNEE OF RECORD |
| | Its: Vice President |
| | A06774 |

| MI 00150 (8-92) | FILING OFFICER |

| 1. NO. OF ADDITIONAL SHEETS | STATE | COUNTY | STATE BILLING ACCT. NO. | FOR FILING OFFICER (Date, Time, Number and Filing Office) |
| | | | M251UG | |

2. DEBTOR(S) (LAST NAME FIRST) AND ADDRESS(ES)
Patricia Gormely Prince, P.C.
255 E. Brown Street Ste. 210
Birmingham, MI 48009
Tax I.D. No. 38-3028257

3. SECURED PARTY(IES) AND ADDRESS(ES)
Comerica Bank
100 Renaissance Center
Detroit, Michigan 48243
Attn: Loan Documentation Review

LIBER ___ PAGE ___

RECD U.C.C UNIT

D055254

SECRETARY OF STATE
LANSING, MI OASI

THIS STATEMENT REFERS TO THE ORIGINAL FINANCING STATEMENT BEARING THE FOLLOWING FILE NUMBER(S):

Sec. of State - File No. C790248    Liber ___    Page ___
Date Filed   December 27, 1993
Reg. of Deeds - File No. ___
Date Filed ___

4. ☐ Continuation The original financing statement bearing file number shown above, is still effective.
5. ☐ Termination Secured party no longer claims a security interest under the financing statement bearing file number shown above.
6. ☐ Assignment The secured party's right under the financing statement bearing file number shown above is (are) assigned to the assignee whose name and address appears in item 10.
7. ☒ Amendment Financing statement bearing file number shown above is amended as set forth in item 10.
8. ☐ Release Secured Party releases the collateral described in item 10 from the financing statement bearing file number shown above.
9. ☐ Other Specify in item 10.
10. Amending to change Debtor's Address from: 1500 Woodward Avenue  Ste. 300
                                              Bloomfield Hills, MI  48303

To: 255 E. Brown Street Ste. 210 Birmingham, MI  48009
Patricia Gormely Prince, P.C.

By: _____                        Comerica Bank
SIGNATURE(S) OF DEBTOR(S)

Its: President                          By: Julie A. Quattro
                                        SIGNATURE OF SECURED PARTY OR ASSIGNEE OF RECORD
                                        Its: Vice President

MI 00155 (8-92)

FILING OFFICER

This FINANCING STATEMENT is provided for filing pursuant to the Michigan Uniform Commercial Code.

(Please Type All Information)

FOR FILING OFFICER
(Date, Time, Number, and Filing Officer)

1. Debtor(s) (Last Name First, if Individual) & Address(es)

Patricia Gormely Prince, P.C.

1500 Woodward Avenue, Suite 300

Bloomfield Hills, MI 48303

Soc. Security #/Tax ID #

38-3028257

A

REC'D U.C.C. UNIT
07/20/98    9:00 AM
SECRETARY OF STATE
LANSING,MI D399914

2. Secured Party(ies) & Address(es)

COMERICA BANK
39200 Six Mile Road
Livonia, Michigan 48152-2689
Attn: UCC Unit (MC 7578)

ACCT NO.6626850726          CC No. 90420

Secured Party #

H36033

4. No. Of Add'l Sheets

5. State Account No.

M-251-UC

3. MAIL ACKNOWLEDGEMENT COPY TO:

6. THIS STATEMENT REFERS TO THE ORIGINAL FINANCING STATEMENT BEARING THE FOLLOWING:

Date of filing                          December 27, 1993

Sec. Of State File Number          C790248

Reg. Of Deeds File Number___

Liber _____ Page _____

7. [  ]    AMENDMENT - The Financing Statement bearing the file number(s) shown in Item 6 is amended as set forth in Item 13 below.

8. [  ]    ASSIGNMENT - All of Secured Party's right under the Financing Statement bearing the file number shown in Item 6 has been assigned to assignee whose name and address appears in Item 13 below.

9. [  ]    PARTIAL ASSIGNMENT - A portion of the Secured Party's right under the Financing Statement bearing the file number shown in Item 6 to the property described in Item 13 below has been assigned to the assignee whose name and address appears in Item 13.

10. [ X ]  CONTINUATION - The original Financing Statement bearing the file number shown in Item 6 is still effective.  A CONTINUATION CANNOT BE FILED MORE THAN SIX MONTHS PRIOR TO EXPIRATION DATE.

11. [  ]   PARTIAL RELEASE - The Secured Party(ies) release(s) the following collateral described in Item 13 below from the original Financing Statement bearing the file number as shown in Item 6.

12. [  ]   TERMINATION - The Secured Party(ies) of record no longer claim(s) a security interest under the Financing Statement bearing the file number shown in Item 6.

13.

X _____
Signature(s) of Debtor(s)

Comerica Bank

X   Rhonda Hall
Signature(s) of Secured Part(ies) or Assignee(s) of Record          Rhonda Hall

X _____
Signature(s) of Debtor(s)

X _____
Signature(s) of Secured Part(ies) or Assignee(s) of Record

IF YOU WISH THE ACKNOWLEDGEMENT COPY TO BE MAILED TO AN ADDRESS OTHER THAN THE SECURED PARTY SHOWN IN ITEM 2, PROVIDE COMPLETE MAILING INFORMATION IN ITEM 3.          (UCC-3)

This FINANCING STATEMENT is provided for filing pursuant to the Michigan Uniform Commercial Code.     (Please Type All Information)

FOR FILING OFFICER
(Date, Time, Number, and Filing Officer)

1. Debtor(s) (Last Name First, if Individual) & Address(es)                Soc. Security #/Tax ID #

Patricia Gormely Prince, P.C.,
A Michigan Professional Corporation     38-3028257
31300 Northwestern Highway,
Farmington Hills, MI 48334-2578

RECD U.C.C. UNIT
06/18/99   9:00 AM
SECRETARY OF STATE
LANSING MI  D532579

2. Secured Party(ies) & Address(es)                Secured Party #

COMERICA BANK
39200 Six Mile Road
Livonia, Michigan 48152-2689
Attn: UCC Unit (MC 7578)

ACCT NO. 6626850726          CC No. 90420

4. No. Of Add'l Sheets          5. State Amount No.
                                M-251-UC

3. MAIL ACKNOWLEDGEMENT COPY TO:

6. THIS STATEMENT REFERS TO THE ORIGINAL FINANCING STATEMENT BEARING THE FOLLOWING:

Date of filing          December 27, 1993

Sec. Of State File Number     C790248

Reg. Of Deeds File Number

Liber _____ Page _____

7. [ ]   AMENDMENT - The Financing Statement bearing the file number(s) shown in Item 6 is amended as set forth in Item 13 below.

8. [ ]   ASSIGNMENT - All of Secured Party's right under the Financing Statement bearing the file number shown in Item 6 has been assigned to assignee whose name and address appears in Item 13 below.

9. [ ]   PARTIAL ASSIGNMENT - A portion of the Secured Party's right under the Financing Statement bearing the file number shown in Item 6 to the property described Item 13 below has been assigned to the assignee whose name and address appears in Item 13.

10. [ ]  CONTINUATION - The original Financing Statement bearing the file number shown in Item 6 is still effective.  A CONTINUATION CANNOT BE FILED MORE THAN SIX MONTHS PRIOR TO EXPIRATION DATE.

11. [ ]  PARTIAL RELEASE - The Secured Party(ies) release(s) the following collateral described in Item 13 below from the original Financing Statement bearing the file number as shown in Item 6.

12. [ ]  TERMINATION - The Secured Party(ies) of record no longer claim(s) a security interest under the Financing Statement bearing the file number shown in Item 6.

13. [X]  PLEASE AMEND TO REFLECT CHANGE OF ADDRESS: 31300 Northwestern Highway
                                                      Farmington Hills, MI 48334-2578

Patricia Gormely Prince, P.C.,
A Michigan Professional Corporation

X _____          COMERICA BANK
Signature of Debtor

President                          x _____
Title of Debtor                    Signature(s) of Secured Part(ies) of Assignee(s) of Record

                                   Vice President
                                   Title(s) of Secured Part(ies) of Assignee(s) of Record

X _____
Signature of Debtor

Title of Debtor

IF YOU WISH THE ACKNOWLEDGEMENT COPY TO BE MAILED TO AN ADDRESS OTHER THAN THE SECURED PARTY SHOWN IN ITEM 2, PROVIDE COMPLETE MAILING INFORMATION IN ITEM 3.
(UCC-3)

H360339

**UCC FINANCING STATEMENT** AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] | | Account No. |
|---|---|---|
| 6626850726 | 90420 | M 251 UC |

Michigan Department of State - Uniform Commercial Code

2003200411-1   10/21/03 05:00 PM

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
        COMERICA BANK
        39200 Six Mile Road
        Livonia, MI 48152-2689
        Attn:  Commercial Loan
               Documentation MC 7578
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is |
|---|---|
| C790248 | to be billed [for record] (or recorded) in the REAL ESTATE RECORDS. ☐ |

2. ☐ **TERMINATION**: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION**: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE Name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  PATRICIA GORMELY PRINCE PC | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  Comerica Bank  39200 Six Mile Road, Livonia, MI 48152 | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICER COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98) !FormUCC3ra9.wpd

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Account No.
M 251 UC

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

COMERICA BANK
39200 Six Mile Road
Livonia, MI 48152-2689
Attn: Commercial Loan
       Documentation MC 7578

Michigan Department of State - Uniform Commercial Code

2004045919-0   03/04/04 05:00 PM

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. FINANCING STATEMENT FILE #

C790248 12/27/93

1b. This FINANCING STATEMENT AMENDMENT is to be billed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME
OR  Patricia Gormely Prince, P.C.

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME
OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

## SEE EXHIBIT A

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME
COMERICA BANK

| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA
Patricia Gormely Prince, P.C.

FILING OFFICER COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02) !FormUCC3ra9.wpd    Doc Prep

## EXHIBIT A

All of the following property now owned or later acquired by Debtor, wherever located: all accounts (including without limit health care insurance receivables), chattel paper (including without limit tangible and electronic chattel paper), commercial tort claims of any nature, contract rights, deposit accounts, documents, general intangibles (including without limit payment intangibles and software), instruments, inventory (including without limit raw materials, work in process, returns and repossessions), letter of credit rights, supporting obligations, and all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind and records (including without limit computer software) pertaining to the foregoing property, and all products and proceeds of any of the foregoing (whether cash or non-cash proceeds), including without limit insurance and condemnation proceeds. A reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral. All terms herein have the meanings assigned to them in the Uniform Commercial Code, as those meanings may be amended, revised or replaced from time to time. "Uniform Commercial Code" means Act No. 174 of the Michigan Public Acts of 1962, as amended, revised or replaced from time to time, including without limit as amended by Act No. 348 of the Michigan Public Acts of 2000. The terms used herein which are defined in the Uniform Commercial Code shall have, at all times, the broadest and most inclusive meanings possible.

Michigan Department of State - Uniform Commercial Code

Document Number:

**2008104478-4**

# UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

Filing Date and Time:

7/1/2008 7:20:42 PM

*(This document was filed electronically.)*

A. NAME & PHONE OF CONTACT AT FILER [optional]
Kara Golden

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Diligenz, Inc.

6500 Harbour Hts Pkwy

Suite 400

Mukilteo                              WA    98275

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is |
|---|---|
| C790248 | to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.   ☐ DELETE name: Give record name to be deleted in item 5a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | 7c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| | 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | COMERICA BANK | | | |
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA
6626850726 - 90420 - PATRICIA GORMELY PRINCE, P.C.    AI    [34900647]

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

Michigan Department of State - Uniform Commercial Code

Document Number:

**2013110576-1**

Filing Date and Time:

7/30/2013 10:39:33 AM

*(This document was filed electronically.)*

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Corporation Service Company
801 Adlai Stevenson Drive

Springfield                    IL      62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. |
|---|---|
| C790248 | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                                 AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME   COMERICA BANK | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
6626850726 - 90420 - PATRICIA GORMELY PRINCE, P.C.   AI   [78461230]

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Michigan Department of State - Uniform Commercial Code

Document Number:

**2016078193-4**

Filing Date and Time:

6/4/2016 7:35:26 PM

*(This document was filed electronically.)*

# UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Corporation Service Company
801 Adlai Stevenson Drive

Springfield                    IL      62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|---|
| C790248 | | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                                      **AND** Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record      ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME **Patricia Gormely Prince, P.C.** | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME Patricia Gormely Prince, P.C. | | | | |
|---|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 7c. MAILING ADDRESS 800 W. Long Lake | CITY Bloomfield Hills | STATE MI | POSTAL CODE 48304 | COUNTRY USA |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME COMERICA BANK | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
91160 Debtor:Patricia Gormely Prince, P.C.    [116125970]

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number:** 20180730000005-2

Filing Date and Time: 07/30/2018 12:29 AM

Total Number of Pages: 1

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
**Corporation Service Company  800-858-5294**

**B. E-MAIL CONTACT AT FILER** (optional)
**FilingDept@cscinfo.com**

**C. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

**Corporation Service Company**
**801 Adlai Stevenson Dr**
**Springfield, IL 62703 USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER **C790248** | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|OR| | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|OR| | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME **COMERICA BANK** | | | |
|OR| | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**6626850726 - 90420 - PATRICIA GORMELY PRINCE, P.C. AI [149939763]**

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

| 1. NO. OF ADDITIONAL SHEETS | STATE | COUNTY | STATE BILLING ACCT. NO.<br>N251UC | FOR FILING OFFICER<br>(Date, Time, Number, and Filing Office) |
|---|---|---|---|---|

2. DEBTOR(S) (LAST NAME FIRST) AND ADDRESS(ES)

Patricia Gormely Prince, P.C.
1500 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48303

TAX I.D. NO. 38-3028257

3. SECURED PARTY(IES) AND ADDRESS(ES)

Comerica Bank
100 Renaissance Center
Detroit, Michigan 48243
Attn: Loan Documentation Review

RECEIVED
U.C.C. UNIT 9:00 A.M.

2 27 93    C793248

RICHARD H. AUSTIN
SECRETARY OF STATE
LANSING, MICHIGAN 48918

4. NAME AND ADDRESS(ES) OF ASSIGNEE(S) (IF ANY)

X CHECK IF APPLICABLE

X 5. Products of collateral are also covered.

☐ 6. Collateral was brought into this state subject to a security interest in another jurisdiction.

7. THIS FINANCING STATEMENT COVERS THE FOLLOWING TYPES (OR ITEMS) OF PROPERTY:

All equipment and fixtures now owned or later acquired by Debtor, wherever located, including but not limited to all property described in any attached Schedule A hereto, and all additions, attachments, accessions, parts, replacements, substitutions, and renewals of or for all equipment and fixtures of Debtor, wherever located and whether now owned or later acquired, and all records (including without limit computer software) pertaining thereto, and all products and proceeds of the foregoing (whether cash or non-cash proceeds), including, without limitation, insurance and condemnation proceeds.

Patricia Gormely Prince, P.C.

By: _____

SIGNATURE(S) OF DEBTOR(S)

Its: President

Comerica Bank

By: Julie A. Quattro

SIGNATURE OF SECURED PARTY OR ASSIGNEE OF RECORD

Its: Vice President

H06774

MI 00151 (8-92)                    FILING OFFICER

| 1. NO. OF ADDITIONAL SHEETS | STATE | COUNTY | STATE BILLING ACCT. NO.  M26740 | | FOR FILING OFFICER (Date, Time, Number, and Filing Officer) | |
|---|---|---|---|---|---|---|
| | | | | LIBER | PAGE | |

2. DEBTOR(S) (LAST NAME FIRST) AND ADDRESS(ES)
Patricia Gormely Prince, P.C.
255 E. Brown Street Ste. 210
Birmingham, MI 48009
Tax I.D. No. 138-3028257

3. SECURED PARTY(IES) AND ADDRESS(ES)
Comerica Bank
100 Renaissance Center
Detroit, Michigan 48243
Attn: Loan Documentation Review

REC'D U.C.C UNIT
1996  DO55253
SECRETARY OF STATE
LANSING, MI

THIS STATEMENT REFERS TO THE ORIGINAL FINANCING STATEMENT BEARING THE FOLLOWING FILE NUMBER(S):

Sec. of State - File No. ___C790249___   Liber ___  Page ___

Date Filed ___December 27, 1993___   Reg. of Deeds - File No. ___  Date Filed ___

4. ☐ Continuation  The original financing statement bearing file number shown above, is still effective.

5. ☐ Termination  Secured party no longer claims a security interest under the financing statement bearing file number shown above.

6. ☐ Assignment  The secured party's right under the financing statement bearing file number shown above to the property described in item 10 has been assigned to the assignee whose name and address appears in item 10.

7. ☒ Amendment  Financing statement bearing file number shown above is amended as set forth in item 10.

8. ☐ Release  Secured Party releases the collateral described in item 10 from the financing statement bearing file number shown above.

9. ☐ Other  Specify in item 10.

10. Amending to change Debtor's address from: 1500 Woodward Avenue  Ste. 300
                                              Bloomfield Hills, MI 48303

To: 255 E. Brown Street Ste. 210 Birmingham, MI 48009    Comerica Bank
Patricia Gormely Prince, P.C.

By: _____                   By: _Julie A. Quitton_____
   SIGNATURE(S) OF DEBTOR(S)                        SIGNATURE OF SECURED PARTY OR ASSIGNEE OF RECORD
Its: X  President                             Its: Vice President

MI 00155 (8-92)                    FILING OFFICER

This FINANCING STATEMENT is provided for filing pursuant to the Michigan Uniform Commercial Code.     (Please Type All Information)

| | FOR FILING OFFICER (Date, Time, Number, and Filing Officer) |

1. Debtor(s) (Last Name First, if Individual) & Address(es)     Soc. Security #/Tax ID #

Patricia Gormely Prince, P.C.     38-3028257

1500 Woodward Avenue, Suite 300

Bloomfield Hills, MI 48303

REC'D U.C.C. UNIT
07/20/98    9:00 AM
SECRETARY OF STATE
LANSING, MI D399915

2. Secured Party(ies) & Address(es)     Secured Party #

COMERICA BANK     H36033
39200 Six Mile Road
Livonia, Michigan 48152-2689
Attn: UCC Unit (MC 7578)

ACCT NO.6626850726     CC No. 90420

4. No. of Add'l Sheets

5. State Account No.    M-251-UC

3. MAIL ACKNOWLEDGEMENT COPY TO:

6. THIS STATEMENT REFERS TO THE ORIGINAL FINANCING STATEMENT BEARING THE FOLLOWING:

Date of filing     December 27, 1993

Sec. Of State File Number     C790249

Reg. Of Deeds File Number

Liber ____ Page ____

7. [ ] AMENDMENT - The Financing Statement bearing the file number(s) shown in Item 6 is amended as set forth in Item 13 below.

8. [ ] ASSIGNMENT - All of Secured Party's right under the Financing Statement bearing the file number shown in Item 6 has been assigned to assignee whose name and address appears in Item 13 below.

9. [ ] PARTIAL ASSIGNMENT - A portion of the Secured Party's right under the Financing Statement bearing the file number shown in Item 6 to the property described in Item 13 below has been assigned to the assignee whose name and address appears in Item 13.

10. [ X ] CONTINUATION - The original Financing Statement bearing the file number shown in Item 6 is still effective. A CONTINUATION CANNOT BE FILED MORE THAN SIX MONTHS PRIOR TO EXPIRATION DATE.

11. [ ] PARTIAL RELEASE - The Secured Party(ies) release(s) the following collateral described in Item 13 below from the original Financing Statement bearing the file number as shown in Item 6.

12. [ ] TERMINATION - The Secured Party(ies) of record no longer claim(s) a security interest under the Financing Statement bearing the file number shown in Item 6.

13.

Comerica Bank

X _____     x _Rhonda Hall_____

Signature(s) of Debtor(s)     Signature(s) of Secured Part(ies) or Assignee(s) of Record     Rhonda Hall

X _____     X _____

Signature(s) of Debtor(s)     Signature(s) of Secured Part(ies) or Assignee(s) of Record

IF YOU WISH THE ACKNOWLEDGEMENT COPY TO BE MAILED TO AN ADDRESS OTHER THAN THE SECURED PARTY SHOWN IN ITEM 2, PROVIDE COMPLETE MAILING INFORMATION IN ITEM 3.     (UCC-3)

This FINANCING STATEMENT is provided for filing pursuant to the Michigan Uniform Commercial Code.

(Please Type All Information)

FOR FILING OFFICER
(Date, Time, Number, and Filing Officer)

1. Debtor(s) (Last Name First, if Individual) & Address(es)

Patricia Gormely Prince, P.C.,
A Michigan Professional Corporation
31300 Northwestern Highway,
Farmington Hills, MI 48334-2578

Soc. Security #/Tax ID #

38-3028257

RECD U.C.C. UNIT
06/18/99    9:00 AM
SECRETARY OF STATE
LANSING MI  D532578

2. Secured Party(ies) & Address(es)

COMERICA BANK
39200 Six Mile Road
Livonia, Michigan 48152-2689
Attn: UCC Unit (MC 7578)

ACCT NO. 6626850726          CC No. 90420

Secured Party #

4. No. of Add'l Sheets

5. State Account No.

M-251-UC

3. MAIL ACKNOWLEDGEMENT COPY TO:

6. THIS STATEMENT REFERS TO THE ORIGINAL FINANCING STATEMENT BEARING THE FOLLOWING:

Date of filing          December 27, 1993

Sec. Of State File Number      C790249

Reg. Of Deeds File Number _____

Liber _____ Page _____

7. [ ]   AMENDMENT - The Financing Statement bearing the file number(s) shown in Item 6 is amended as set forth in Item 13 below.

8. [ ]   ASSIGNMENT - All of Secured Party's right under the Financing Statement bearing the file number shown in Item 6 has been assigned to assignee whose name an address appears in Item 13 below.

9. [ ]   PARTIAL ASSIGNMENT - A portion of the Secured Party's right under the Financing Statement bearing the file number shown in Item 6 to the property described Item 13 below has been assigned to the assignee whose name and address appears in Item 13.

10. [ ]   CONTINUATION - The original Financing Statement bearing the file number shown in Item 6 is still effective.  A CONTINUATION CANNOT BE FILED MORE THAN SIX MONTHS PRIOR TO EXPIRATION DATE.

11. [ ]   PARTIAL RELEASE - The Secured Party(ies) release(s) the following collateral described in Item 13 below from the original Financing Statement bearing the file number as shown in Item 6.

12. [ ]   TERMINATION - The Secured Party(ies) of record no longer claim(s) a security interest under the Financing Statement bearing the file number shown in Item 6.

13. [X]   PLEASE AMEND TO REFLECT CHANGE OF ADDRESS: 31300 Northwestern Highway
                                                    Farmington Hills, MI 48334-2578

Patricia Gormely Prince, P.C.,
A Michigan Professional Corporation

X _____
Signature of Debtor

President
Title of Debtor

X _____
Signature of Debtor

Title of Debtor

COMERICA BANK

x _____
Signature(s) of Secured Part(ies) or Assignee(s) of Record

Vice President
Title(s) of Secured Part(ies) or Assignee(s) of Record

IF YOU WISH THE ACKNOWLEDGEMENT COPY TO BE MAILED TO AN ADDRESS OTHER THAN THE SECURED PARTY SHOWN IN ITEM 2, PROVIDE COMPLETE MAILING INFORMATION IN ITEM 3.

(UCC-3)

H360339

Michigan Department of State - Uniform Commercial Code

2003200412-3   10/21/03 05:00 PM

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
6626850726          90420

Account No.
M 251 UC

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

COMERICA BANK
39200 Six Mile Road
Livonia, MI 48152-2689
Attn: Commercial Loan
Documentation MC 7578

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. FINANCING STATEMENT FILE #
C790249

1b.  This FINANCING STATEMENT AMENDMENT is to be billed [for record] (or recorded) in the REAL ESTATE RECORDS

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law..

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME
OR  PATRICIA GORMELY PRINCE PC

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME
OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME
OR  Comerica Bank
39200 Six Mile Road, Livonia, MI  48152

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICER COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98) !FormUCC3ra9.wpd

Michigan Department of State - Uniform Commercial Code

2004045920-3    03/04/04 05:00 PM

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] | Account No. M 251 UC |
|---|---|

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
COMERICA BANK
39200 Six Mile Road
Livonia, MI 48152-2689
Attn: Commercial Loan
       Documentation MC 7578
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be billed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| C790249 12/27/93 | |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record.  Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE Name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Patricia Gormely Prince, P.C. | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR: | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted  or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

## SEE EXHIBIT A

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COMERICA BANK | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

Patricia Gormely Prince, P.C.

FILING OFFICER COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02) !FormUCC3ra9.wpd    Doc Prep

## EXHIBIT A

All of the following property now owned or later acquired by Debtor, wherever located: all machinery, equipment and fixtures, and all additions, attachments, accessions, parts, replacements, substitutions, renewals and records (including without limit computer software) pertaining to the foregoing property, and all general intangibles (including without limit software) acquired or used in connection with any of the foregoing, and all products and proceeds of any of the foregoing (whether cash or non-cash proceeds), including without limit insurance and condemnation proceeds. A reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral.  All terms herein have the meanings assigned to them in the Uniform Commercial Code, as those meanings may be amended, revised or replaced from time to time. "Uniform Commercial Code" means Act No. 174 of the Michigan Public Acts of 1962, as amended, revised or replaced from time to time, including without limit as amended by Act No. 348 of the Michigan Public Acts of 2000. The terms used herein which are defined in the Uniform Commercial Code shall have, at all times, the broadest and most inclusive meanings possible.

Michigan Department of State - Uniform Commercial Code

Document Number:

**2008104479-6**

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

Filing Date and Time:

7/1/2008 7:22:05 PM

*(This document was filed electronically.)*

A. NAME & PHONE OF CONTACT AT FILER [optional]

Kara Golden

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Diligenz, Inc.

6500 Harbour Hts Pkwy

Suite 400

Mukilteo                          WA        98275

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| C790249 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | COMERICA BANK | | | |
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA

6626850726 - 90420 - PATRICIA GORMELY PRINCE, P.C.   EQ   [34900682]

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

Michigan Department of State - Uniform Commercial Code

Document Number:

**2013110581-2**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

Filing Date and Time:

7/30/2013 10:40:34 AM

*(This document was filed electronically.)*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Corporation Service Company |

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Corporation Service Company
801 Adlai Stevenson Drive

Springfield          IL      62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|---|
| C790249 | | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☑ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                     AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address. Complete item 6a or 6b; and item 7a or 7b and item 7c. | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME  COMERICA BANK | | | |
|---|---|---|---|---|
| OR | | | | |
| | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
6626850726 - 90420 - PATRICIA GORMELY PRINCE, P.C.   EQ   [78461237]

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Michigan Department of State - Uniform Commercial Code

Document Number:

**2016034953-4**

Filing Date and Time:

3/15/2016 12:06:44 PM

*(This document was filed electronically.)*

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Corporation Service Company
801 Adlai Stevenson Drive

Springfield          IL    62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER C790249 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

2. ☐ **TERMINATION**: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9 For partial assignment, complete items 7 and 9 also indicate affected collateral in item 8

4. ☐ **CONTINUATION**: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE**:
Check one of these two boxes:          AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record    ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PATRICIA GORMELY PRINCE, P.C. | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME PATRICIA GORMELY PRINCE, P.C. | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 800 West Long Lake Road, Suite 200 | Bloomfield Hills | MI | 48302 | USA |

8. ☐ **COLLATERAL CHANGE**: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME COMERICA BANK | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
90420 - PATRICIA GORMELY PRINCE, P.C. Debtor:PATRICIA GORMELY PRINCE, P    [107337328]

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number:** 20180730000006-1

Filing Date and Time: 07/30/2018 12:29 AM

Total Number of Pages: 1

*(This document was filed electronically)*

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Corporation Service Company  800-858-5294**

B. E-MAIL CONTACT AT FILER (optional)
**FilingDept@cscinfo.com**

C. SEND ACKNOWLEDGEMENT TO:  (Name and Address)

**Corporation Service Company**
**801 Adlai Stevenson Dr**
**Springfield, IL 62703 USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**C790249**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**
Check one of these two boxes:  **AND** Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR | 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
**COMERICA BANK**

OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
**6626850726 - 90420 - PATRICIA GORMELY PRINCE, P.C. EQ [149939770]**

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

███████████████
███████████████
███████████████
███████████████

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

Filing Number: 20200603001399-7

Filing Date and Time: 06/03/2020 09:16 PM

Total Number of Pages: 1

*(This document was filed electronically)*

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Corporation Service Company  800-858-5294**

B. E-MAIL CONTACT AT FILER (optional)
**FilingDept@cscinfo.com**

C. SEND ACKNOWLEDGEMENT TO:  (Name and Address)

**Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703 USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Patricia Gormely Prince, P.C.** | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 800 W. Long Lake Road, Suite 200 | Bloomfield Hills | MI | 48302 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **U.S. Small Business Administration** | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2 North Street, Suite 320 | Birmingham | AL | 35203 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto. 327111 7804

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**[184758192]**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# EXHIBIT 4

**John Tragge**
jtragge@stwlawfirm.com



**Stancato Tragge Wells PLLC**
**Two Towne Square**
**Suite 825**
**Southfield, MI 48076**
**(248) 731-4500**
**(248) 419-1113 - Fax**

October 20, 2021

*By First Class and Certified Mail*

Patricia Gormely Prince, P.C.
Shaheen I. Imami, Resident Agent
c/o Michael D. Lieberman, Esq.
3910 Telegraph Road, Suite 200
Bloomfield, Hills, MI 48302

Shaheen I. Imami, Esq.
Baker Donelson
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450-1801

RE:    FINANCING ARRANGEMENTS AMONG COMERICA BANK ("BANK" OR "COMERICA") AND PATRICIA GORMELY PRINCE, P.C., A MICHIGAN PROFESSIONAL CORPORATION A/K/A PRINCE LAW FIRM (BORROWER") AND SHAHEEN I. IMAMI - DEMAND FOR PAYMENT IN FULL - NOTICE AND DEMAND FOR DOMINION OF FUNDS

Dear Mr. Imami:

Please refer to all documents, instruments and agreements executed in connection with the financing arrangements from Bank to Borrower (collectively referred to herein as the "Loan Documents").  All amounts due from Borrower to Bank, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents shall be known as the "Liabilities."  The specific credit facility included in the Liabilities is identified in the table below and shall be known as the "Loan."  All capitalized terms not defined in this letter shall have the meanings ascribed in the Loan Documents.

As of October 15, 2021, the Liabilities include:

| The Loan (Note Amount; Date) | Unpaid Principal | Accrued Interest | Late Charges | Unpaid Balance |
|---|---|---|---|---|
| Obligation No.            -26 ($200,000.00; 5/27/2016) | $177,000.00 | $1,693.79 | $273.48 | $178,967.27 |
| | | | **Total:** | **$178,967.27** |

The amounts referenced in the preceding table are exclusive of interest and any late charges accruing after October 15, 2021, and all costs and expenses (including, but not limited to, inside and outside counsel fees), appraisal fees, and costs for inspections and/or audits, which amounts are immediately due and payable from the Borrower and its successors to the Bank upon the accrual and/or incurrence thereof.

The Loan is a demand obligation evidenced by a Master Revolving Note (Prime Referenced Rate–Demand–Optional Advances) dated May 27, 2016 in connection with a revolving line of credit in the maximum principal amount of $200,000.00 (the "Note").  Non-default interest on the unpaid principal balance of the Note accrues at a variable rate equal to the Bank's Prime Referenced Rate plus an Applicable Margin, as defined in that instrument, (the "Note Interest Rate"), which is presently 3.25% per annum.  In addition, the Note requires the payment of

**STANCATO TRAGGE WELLS, PLLC**
**Demand for Payment**
**Notice and Demand for Dominion of Funds**
**Directive for Use of Collateral Deposit Account**
*Patricia Gormely Prince, P.C.*
*Shaheen I. Imami*
October 20, 2021
**Obligation No.            -26**
Page 2 of 3

late charges equal to 5.00% of the unpaid portion of any regularly scheduled payment not received by the Bank within ten (10) calendar days after the due date.

***Comerica Bank hereby formally demands payment of the Note and requires the Borrower immediately pay the Liabilities in full in accordance with the Loan Documents.  Any and all prior offers of settlement or compromise by Bank are hereby withdrawn and rescinded.***

Comerica hereby invokes the Default Interest Rate provided for in the Note.  Accordingly, interest on the unpaid principal balance of the Loan is now accruing at the Note Interest Rate plus an additional 3.00% per annum, resulting in a default interest rate which is presently 6.25% per annum (the "Default Interest Rate").

As partial security for payment of the Liabilities, the Borrower executed a Security Agreement (the "Security Agreement") granting Comerica a blanket security interest all of the Borrower's currently owned or later acquired inventory, equipment, fixtures, accounts, general intangibles, and other business assets, including accounts receivable, contract and payment rights, business expectancies and all proceeds of same, as more fully described the Security Agreements and related Loan Document (the "Business Asset Collateral").  Comerica holds a first perfected security interest in all the Business Asset Collateral.

***Effective immediately, pursuant the Section 3 of the Security Agreement (which you should review), Comerica hereby revokes the Borrower's right to independently collect or otherwise sell, assign, transfer, convey and/or dispose of the Business Asset Collateral and its proceeds.  Comerica will be establishing a Collateral Deposit Account for the purpose of collecting and enforcing its rights to the Business Asset Collateral under the Security Agreement and Loan Documents (the "Collateral Deposit Account"), and hereby demands that you:***

      ***a)***     ***immediately account for, disgorge, segregate and hold in trust for Comerica all payments received in connection with the Business Asset Collateral and from the collection, sale, or other disposition of any Business Asset Collateral, without deduction or setoff of any kind or nature;***

      ***b)***     ***immediately turn over to Comerica for deposit to the Cash Collateral Account any funds,  check(s) or other payments(s) received on the Business Asset Collateral or from the collection, sale, lease, assignment or other disposition of any Business Asset Collateral, or arising from any other rights or interests of the Borrower in the Business Asset Collateral, in the form received, without commingling with any other funds;***

      ***c)***     ***instruct all your account debtors, including all estates or clients for which you are a fiduciary, to make all payments (and all electronic funds transfer payments) directly to the order of Comerica Bank or to the Collateral Deposit Account.***

Notwithstanding Comerica's exercise of its right to dominion of funds under the Security Agreement and related Loan Documents, please note that Comerica has no duty as to the collection or protection of the Business Asset Collateral or the proceeds of it, nor as to the preservation of any related rights, beyond the use of reasonable care in the custody and preservation of any Business Asset Collateral in actual possession of the Bank.  Borrower,

**STANCATO TRAGGE WELLS, PLLC**
**Demand for Payment**
**Notice and Demand for Dominion of Funds**
**Directive for Use of Collateral Deposit Account**
*Patricia Gormely Prince, P.C.*
*Shaheen I. Imami*
October 20, 2021
**Obligation No.           -26**
Page 3 of 3

Shaheen I. Imami, and their respective employees and agents remain obligated to take all steps necessary to preserve rights against the claims of other parties with respect to the Business Asset Collateral.

Nothing contained in this letter shall be deemed a consent by Comerica to any sale, assignment, transfer, conveyance or other disposition of any Business Asset Collateral without Comerica's express written consent. This letter is not intended to be a waiver of any rights, remedies or recourse available to Comerica, nor an election of remedies arising as a result of the events of default under the Security Agreement and other Loan Documents, or any other defaults which may now or hereafter exist. Any partial payments received and accepted by Comerica on or after this date, whether pursuant to this dominion of funds letter or otherwise, shall not constitute a cure of the events of default, or act as a waiver Comerica's cumulative creditor's rights and remedies under the Loan Documents or otherwise available at law. Further, any delay or forbearance by Comerica in exercising its rights shall not constitute a waiver of its ability to subsequently enforce such rights at a later date.

Any partial payments received by Comerica on or after this date that are accepted by Comerica shall not constitute a cure of any events of default, or act as a waiver Comerica's demand for payment in full or cumulative creditor's rights and remedies. Comerica has not agreed to forbear from exercising any of its rights and remedies, but rather reserves the right to take such action when the Bank deems it necessary and appropriate to protect its interests. Comerica's forbearance from acting to collect the Liabilities with respect to the Borrower, and its successors and principals, jointly or severally, is from day to day in the Bank's sole discretion.

Any prior communications you may have had with the Bank regarding payment of the Liabilities do not constitute an offer of settlement or compromise capable of acceptance. Comerica anticipates that discussions addressing the Liabilities may take place in the future. During such discussions, Comerica and the Borrower may touch upon and possibly reach a preliminary understanding on one or more issues prior to concluding negotiations. Notwithstanding this fact, please be advised that no Comerica Bank employee or officer has any actual, apparent or inherent authority to bind the Bank to any oral modifications, or oral promises, with respect to the Liabilities, the Loan and the Loan Documents. With respect to any future course of dealing with the Bank, only agreements which are reduced to writing, approved by the undersigned counsel, and executed by a specifically authorized Bank officer shall be binding.

Please contact the undersigned counsel to confirm your compliance with this notice and demand letter. In the event that you fail to comply, Comerica has instructed this office to commence additional legal action to exercise the Bank's cumulative creditor's rights and remedies.

Sincerely,<br>
**Stancato Tragge Wells, PLLC**

*/s/ John P. Tragge*

John P. Tragge<br>
Attorneys for Comerica Bank

JPT/
Cc:     Comerica Bank